IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| COMCAST CORPORATION and<br>COMCAST CABLE COMMUNICATIONS<br>MANAGEMENT, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>LABOR; JULIE A. SU, in her official capacity<br>as Acting Secretary of Labor; and WILLIAM<br>P. FARLEY, in his official capacity as<br>Administrative Law Judge,<br><br>        Defendants. | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast") bring this action for declaratory and injunctive relief, alleging as follows:

**INTRODUCTION**

1. For hundreds of years, someone accusing another of breaking a promise to pay money would have turned to the judicial system.

2. In the underlying dispute here, however, Comcast is being compelled to defend itself against what is clearly a contractual claim for monetary damages—albeit thinly disguised as a purported "whistleblower" claim—before an administrative law judge ("ALJ") in administrative proceedings before the U.S. Department of Labor ("DOL").

3. Under 18 U.S.C. § 1514A, enacted as part of the Sarbanes-Oxley Act of 2002 ("SOX"), employees at certain publicly traded companies are protected from retaliation if they report conduct that they reasonably believe violates provisions of federal securities laws.

4. Employees who believe they have been retaliated against for such whistleblower activity may seek relief before the DOL or, if the agency does not issue a final decision within 180 days, a federal district court in which the parties have a right to trial by jury. 18 U.S.C. § 1514A(b)(1), (2)(E); 29 C.F.R. § 1980.114.

5. In either forum, the employee may seek an array of remedies, including compensatory damages. 18 U.S.C. § 1514A(c).

6. If the employee elects to proceed before the agency, rather than a court, DOL regulations authorize a hearing before an ALJ. 29 C.F.R. §§ 1980.106–.107.

7. The ALJ takes evidence, resolves contested questions of fact and law, and renders a decision on the claims. *See* 5 U.S.C. § 556(c); 29 C.F.R. §§ 18.10–.95.

8. At any time after the initial 180 days, an employee who is still proceeding before the agency may change course, using SOX's kick-out provision, and take their claims to court. 18 U.S.C. § 1514A(b)(1)(B). But employers have no similar statutory right to demand a judicial forum. 18 U.S.C. § 1514A(b).

9. Here, two former executives of a startup company that Comcast acquired (the "Complainants") brought claims before a DOL ALJ alleging, principally, that Comcast breached a supposed promise to pay them millions of dollars in incentive compensation (the "ALJ Proceeding").

10. Complainants have tried to shoehorn that breach-of-promise claim into the SOX whistleblower framework by characterizing their complaints about compensation as complaints

about financial-reporting requirements. They allege that they were constructively discharged after complaining to Comcast that it failed to disclose this purported obligation to pay the incentive compensation as a monetary liability in its corporate books and records.

11. But despite this presentation, Complainants are not seeking any relief for retaliation. They have expressly disclaimed the traditional retaliation remedies of reinstatement and backpay. Instead, they have asked the ALJ to award them contract damages: the amount of money that Comcast allegedly promised to pay them as incentive compensation. While Comcast disputes that this remedy is available to Complainants under the statute, the ALJ is proceeding as though it is—having concluded that "the relief requested in the complaint may be granted." Ex. A (Order on Motion to Dismiss).

12. Comcast brings this action because the pursuit of this claim and the attendant relief in the ALJ Proceeding violates the U.S. Constitution in two fundamental ways, and this Court should enjoin the ALJ Proceeding to prevent Comcast from being compelled to continue to submit to an unlawful process.

13. *First*, the administrative adjudication of Complainants' contractual claims for monetary damages violates Comcast's rights under the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

14. As the Supreme Court recently underscored, "[t]he right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (citation omitted).

15. The Seventh Amendment applies with full force to cases involving statutory claims, so long as the claim is "legal in nature," as opposed to a claim within courts' equity or admiralty jurisdiction. *Id.* at 2128 (citation omitted).

16. Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989). Nor can Congress "confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 334 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

17. But compelling Comcast to defend itself against Complainants' suit for contract damages in an administrative forum would work precisely that result. The "remedy" Complainants seek—as well as the common-law nature of the cause of action they plead—are "legal in nature" and thus "implicate[]" Comcast's "Seventh Amendment rights." *Jarkesy*, 144 U.S. at 2130.

18. Complainants have explicitly stated that the relief they seek is not one of the "traditional" forms of relief available under SOX, such as "back pay" or "reinstatement." Ex. B (Response to Motion to Compel) at 2. Instead, they seek compensatory "money damages" for allegedly reneging on an oral contract. That is a "prototypical" *legal* remedy, triggering Comcast's Seventh Amendment right to a jury. *Jarkesy*, 144 S. Ct. at 2128.

19. And leaving aside that their employment law claim is itself a legal claim akin to the common-law claim of "wrongful discharge," their actual claim bears more than a "close relationship" to a typical, classically legal breach-of-contract action—further confirming that their administrative claim is legal in nature. *Id.* at 2130.

20. The ALJ Proceeding pursued by Complainants thus violates the Seventh Amendment and Article III. An administrative adjudication of these claims would deprive

Comcast of its constitutional rights to have these legal claims and damages adjudicated by a jury in a court.

21.    **Second**, the ALJ Proceeding also violates the Constitution because the ALJ is insufficiently accountable to the head of the executive branch, the President.

22.    Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'"  *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020).

23.    To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

24.    The Fourth Circuit has already found that DOL ALJs are inferior officers because, "like their SEC counterparts," they "conduct trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions." *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023) (quoting *Lucia v. SEC*, 585 U.S. 237, 238 (2018)).  These activities, even though they take a judicial form, are still exercises of "the 'executive Power,' for which the President is ultimately responsible." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (citations omitted).

25.    Yet the President cannot adequately control ALJs' performance of these functions because the President's ability to remove DOL ALJs is hindered by two layers of for-cause removal protection:  the ALJs are removable only for cause as determined by Merit Systems Protection Board ("MSPB") Members, who are themselves removable only for cause.  *See* 5 U.S.C. §§ 1202(d), 7521(a).

26.    Such multilayered removal protection violates the Constitution because it deprives the President of any meaningful ability to hold subordinate executive officers responsible for their

official acts.  *See Free Enter. Fund*, 561 U.S. at 495–98; *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024).

27. For this reason, the ALJ hearing framework established by 18 U.S.C. § 1514A is unlawful, and Comcast brings this action to declare the removal restrictions unlawful, enjoin the ALJ Proceeding, and ensure that Comcast is not subjected to an inherently unconstitutional process.

28. The statute here gives Complainants an ability to avoid these problems.  Even now, 18 U.S.C. § 1514A permits them to take their case before an Article III judge and a jury of their peers.  Because Congress expressly allowed them to pursue their claims in federal court, they will not be harmed by granting the declaratory and injunctive relief Comcast seeks.

29. The Court should enter that relief to ensure that Comcast is not subjected to unlawfully structured administrative proceedings and that both sides in the underlying dispute receive their constitutionally protected day in court.

## JURISDICTION AND VENUE

30. This action arises under the Constitution and laws of the United States.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 over Comcast's claims that fundamental structural aspects of the DOL ALJ proceedings against it violate the Constitution.  *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190–96 (2023).

31. The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

32. Venue is proper in this district under 28 U.S.C. § 1391(e)(1).  Defendants are officers of an agency of the United States acting in their official capacity.  A substantial part of the events or omissions giving rise to the claims occurred in this District, because the complainants in

the DOL ALJ proceeding against Comcast were employed in Arlington, Virginia within this District.

## PARTIES

33. Plaintiff Comcast Corporation is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.[1]

34. Plaintiff Comcast Cable Communications Management, LLC is a Delaware limited liability company with its principal place of business in Philadelphia, Pennsylvania.

35. Defendant the U.S. Department of Labor is an administrative agency of the United States, headquartered in Washington, D.C.

36. Defendant Julie A. Su is the Acting Secretary of Labor. She is sued in her official capacity.

37. Defendant William P. Farley is an administrative law judge within the U.S. Department of Labor, who presides over the DOL ALJ proceedings against Comcast. He is sued in his official capacity.

## FACTS

38. On May 5, 2022, Lawrence Gloss filed a complaint with the DOL accusing Comcast of retaliatory discharge in violation of 18 U.S.C. § 1514A.

39. On May 25, 2022, Travis Rosiek filed a complaint with the DOL alleging retaliatory discharge under 18 U.S.C. § 1514A.

---

[1] The entities named as respondents in Complainants' administrative complaint are "Comcast" and Comcast Cable Communications Management, LLC. There is no entity named "Comcast," and Complainants have not sought to amend their administrative complaint to substitute Comcast Corporation in its place. Because Complainants nonetheless take the position that Comcast Corporation is a proper party in the administrative proceeding, it is forced to seek relief from that proceeding. Comcast Corporation maintains that it is not a proper party to the administrative proceeding.

40. The crux of Complainants' allegations is that Comcast retaliated against them for raising internal concerns that Comcast had violated federal securities laws by not reporting on its financial statements alleged multimillion dollar incentive compensation that Comcast supposedly owed Complainants and similarly situated employees.

41. Complainants had worked as executives at a cybersecurity company called BluVector, which Comcast acquired in March 2019.

42. They assert that in connection with the acquisition, Comcast promised to pay existing members of the BluVector team bespoke incentive compensation based on the future performance of BluVector.

43. In fact, Complainants' offer letters show that Comcast never promised them this incentive compensation. Instead, Comcast promised to pay Complainants specific sums of money as salaries and bonuses and specific amounts of restricted stock shares of Class A Common Stock of Comcast Corporation. Comcast also provided Complainants with a comprehensive benefits package. Ex. C (Gloss Offer Letter); Ex. D (Rosiek Offer Letter).

44. Even though there is no written agreement, let alone company plan, providing for the alleged incentive compensation, Complainants assert that Comcast somehow committed itself to paying the former BluVector team at least $250 million—even though Comcast paid only $30 million to acquire BluVector in the first place.

45. Complainants arrive at this massive number by applying unidentified "industry standard" metrics to BluVector's alleged value—purportedly multiplying the company's revenues by a factor of fifteen, and then taking 30% of that amount. Ex. E (OALJ Complaint) ¶¶ 6, 14–15.

46. Complainants never raised any concerns in writing relating to shareholder fraud, accounting errors, or any other SOX-covered issues during their employment at Comcast.

47. Complainants claim, however, that they orally raised concerns about financial statement fraud, including Comcast's failure to include this incentive compensation plan in its financial statements.

48. They further claim that they were subject to retaliation following their alleged complaints about the incentive compensation and that their later, voluntary resignations from their employment with Comcast were, in fact, constructive discharges. In reality, Complainants voluntarily resigned from Comcast after they received offers of employment elsewhere.

49. In accordance with DOL regulations, the Occupational Safety & Health Administration ("OSHA") investigated the supposed "whistleblower" allegations in Complainants' complaints. *See* 29 C.F.R. § 1980.104(a).

50. After 60 days elapsed without a decision, Complainants requested that OSHA terminate its investigation and issue a determination.

51. On March 23, 2023, the Secretary of Labor, acting through the Regional Administrator for OSHA, Region III, noted Complainants' request and determined, based on what OSHA had gathered during its investigation, that OSHA was "unable to conclude that there is reasonable cause to believe that a violation of the statute occurred." DOL officials therefore dismissed both complaints.

52. On April 13, 2023, Complainants appealed the dismissal of their complaints to DOL's Office of Administrative Judges.

53. On April 18, 2023, the Office of Administrative Law Judges ordered the two administrative cases consolidated.

54. On May 18, 2023, the parties to the administrative proceedings received notice that Defendant Farley had been assigned to the cases for hearing and decision.

55. Complainants filed their consolidated administrative complaint with the Office of Administrative Law Judges on June 12, 2023, which Comcast answered on September 22, 2023.

56. In their consolidated complaint, Complainants restate their retaliation claims and seek payment of the incentive compensation that they claim Comcast promised them when and after it acquired BluVector, as well as litigation costs, expert fees, attorney's fees, and interest, among other relief. Complainants do *not* seek reinstatement or backpay.

57. Complainants had a right to pursue their claims in federal court 180 days after they filed their complaints, 18 U.S.C. § 1514A(b)(1)(B), but they have opted to remain in the DOL's in-house administrative proceedings.

58. The ALJ hearing is currently scheduled to begin November 12, 2024.

## COUNT I – THE ALJ'S ADJUDICATION OF THESE LEGAL CLAIMS WITHOUT A JURY TRIAL VIOLATES THE SEVENTH AMENDMENT AND ARTICLE III

59. Comcast restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

60. The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII.

61. This provision protects the jury's role "as a fact-finding body" and entitles parties "to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

62. "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera*, 492 U.S. at 53). "To

determine whether a suit is legal in nature" courts are "to consider the cause of action and the remedy it provides." *Id.* at 2129.

63. Here, much as in *Jarkesy*, the "the remedy is all but dispositive." *Id.*

64. In the ALJ Proceeding, Complainants are not attempting to pursue any of the make-whole relief typically associated with a whistleblower or constructive discharge case: they are not seeking reinstatement or backpay, which the statute specifically allows. 18 U.S.C. § 1514(c)(2). Instead, they seek what are undeniably breach of contract damages: Complainants have argued, and so far the ALJ has agreed, that SOX entitles them to pursue "the percentage incentive liability Comcast promised [them]." Ex. B (Response to Motion to Compel) at 2; *see also* Ex. A (Order on Motion to Dismiss) at 6 ("The relief requested in the complaint may be granted.").

65. The "money damages," sought by Complainants are the "prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129; *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("Petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity.").

66. Comcast therefore has a right to have a jury decide whether it is liable to Complainants and the extent of any damages. *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962).

67. The "close relationship" between Complainants' underlying cause of action also and several common law causes of action, further "confirms" that their administrative claim is legal in nature. *Jarkesy*, 144 S. Ct. at 2130.

68. An antiretaliation claim under 18 U.S.C. § 1514A is generally akin to a common-law claim for wrongful discharge. *See, e.g.*, *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (explaining "the common-law background to SOX's antiretaliation claim,"

particularly "wrongful discharge of employment"); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 829 (4th Cir. 1994) (finding a jury right for discrimination claims under the Rehabilitation Act because they are akin to common-law tort actions); *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) (finding a jury right for union-related retaliation claims because they are analogous to common-law contract and tort actions);

69. Of course, Complainants' actual underlying complaint—that Comcast failed to make good on allegedly promised incentive compensation—is essentially a common-law claim for breach of contract or promissory estoppel. *See, e.g.*, *Dairy Queen*, 369 U.S. at 477 ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character."). Complainants are not suing to recover for any retaliation; they are suing to recover for the supposed contractual breach.

70. Comcast's right to a jury trial is not undercut by the fact that DOL proceedings are administrative in nature.

71. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the DOL. *Granfinanciera*, 492 U.S. at 61.

72. Nor does this scenario fall within the narrow "public rights" exception that allows certain claims to be resolved outside of an Article III court. *See Jarkesy*, 144 S. Ct. at 2131–34.

73. When, as here, the "suit is in the nature of an action at common law, then the matter presumptively concerns private rights." *Id.* at 2132.

74. Although SOX has a general statutory objective of protecting investors and securities markets, courts recognize that SOX whistleblower claims, by prohibiting employment-related retaliation, focus on affording private remedies to wronged employees. *See Garvey v.*

*Admin. Rev. Bd.*, 56 F.4th 110, 127 (D.C. Cir. 2022); *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 840 (9th Cir. 2024). That is doubly true here, where the whistleblower claim effectively embeds a private contractual claim.

75. Complainants' whistleblower protection claims are private employment-related disputes and thus cannot be withdrawn from the cognizance of an Article III jury.

76. Congress itself has recognized the value of a jury trial for SOX whistleblower claims in providing for a jury trial when complainants exercise their option of filing suit in federal court. 18 U.S.C. § 1514A(b)(1)(B), (2)(E).

77. Without interim injunctive relief from this Court, Comcast's claims will be improperly adjudicated by an administrator instead of a jury in an Article III court.

78. Comcast bears a strong likelihood of success on this claim for the reasons detailed above.

79. But unless Defendants are enjoined from moving forward with the ALJ Proceeding in place of an Article III proceeding before a jury, Comcast will be irreparably harmed.

80. Deprivation of an individual constitutional right is often an irreparable injury—even for minimal amounts of time. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

81. And having to appear in unconstitutionally structured agency proceedings is an injury that cannot be remedied once the proceeding is over. *Axon Enter.*, 598 U.S. at 191.

82. The harm to Comcast, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the DOL if such relief is granted.

83. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting constitutional rights.

84. Moreover, Complainants will not be harmed because they remain free to pursue their claims before a federal court, which is an avenue that Congress created in 18 U.S.C. § 1514A.

## COUNT II – DOL ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

85. Comcast restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

86. As the Fourth Circuit has recognized, DOL ALJs are officers of the United States because they assist in carrying out the President's duties by "conduct[ing] trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions." *K&R Contractors*, 86 F.4th at 143; *see also* 5 U.S.C. § 556(c); 29 C.F.R. §§ 18.10–.95.

87. These activities, even though they take a judicial form, are still exercises of "the '"executive Power,"' for which the President is ultimately responsible." *Arthrex*, 594 U.S. at 17 (citations omitted).

88. Given DOL ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

89. Yet the President cannot adequately control the performance of these ALJs' functions because DOL ALJs are insulated from presidential control by two layers of for-cause removal protection. *See Free Enter. Fund*, 561 U.S. at 492–508.

90. First, ALJs are removable only for cause, as determined by the MSPB. 5 U.S.C. § 7521(a).

91. Second, MSPB Members also are removable only for cause—"inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

92. The statutes' provision of two layers of removal protection impermissibly restricts presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508.

93. But for these unlawful removal restrictions, the ALJ assigned to Comcast's administrative case would face the prospect of removal by the President based on his conduct during the proceedings.

94. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 598 U.S. at 191 (citation omitted).

95. Merely being subject to a hearing and decision in proceedings before an insulated ALJ causes Comcast ongoing harm.

96. This harm exists even if a President does not actively desire to remove a particular ALJ, because the mere potential for removal influences how rational ALJs carry out their duties. After all, Congress sought to make DOL ALJs politically independent for a reason: it wanted to insulate them from political pressures. *See, e.g.*, *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part and dissenting in part).

97. In addition, a showing of particularized cause and effect between the removal restrictions and ALJ actions is unnecessary to declare that the removal restrictions are unconstitutional.

98. Comcast is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Comcast is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

99. Without interim injunctive relief from this Court, Comcast will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

100. Comcast bears a strong likelihood of success on this claim for the reasons detailed above.

101. But unless the DOL is enjoined from proceeding against Comcast before an ALJ unconstitutionally insulated from presidential oversight, Comcast will be irreparably harmed.

102. Deprivation of an individual constitutional right is often an irreparable injury, *Elrod*, 427 U.S. at 373, and having to appear in unconstitutionally structured agency proceedings is an injury that cannot be remedied once the proceeding is over, *Axon Enter.*, 598 U.S. at 191.

103. The harm to Comcast, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the DOL if such relief is granted.

104. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Comcast hereby requests that the Court order the following relief and enter a judgment:

1. Declaring that:

    a. The ALJ Proceeding against Comcast unlawfully deprives Comcast of its constitutional right to trial by jury in an Article III court; and

    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of DOL ALJs, including Defendant Farley, are unconstitutional; and

2. Preliminarily enjoining Defendants from subjecting Comcast to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Awarding Comcast its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

4. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.


Dated: August 9, 2024                                    Respectfully submitted,

                                                         */s/ Shannon L.C. Ammon*

SULLIVAN & CROMWELL LLP                                  MORGAN, LEWIS & BOCKIUS LLP

Jeffrey B. Wall (*pro hac vice* forthcoming)             Shannon L.C. Ammon, VA Bar ID # 83713
wallj@sullcrom.com                                       shannon.ammon@morganlewis.com
Morgan L. Ratner (*pro hac* vice forthcoming)            Sarah E. Bouchard (*pro hac vice* forthcoming)
ratnerm@sullcrom.com                                     sarah.bouchard@morganlewis.com
1700 New York Avenue NW                                  David C. Dziengowski (*pro hac vice* forthcoming)
Suite 700                                                david.dziengowski@morganlewis.com
Washington, DC  20006                                    2222 Market Street
Telephone:    +1.202.956.7500                            Philadelphia, PA  19103
Facsimile:    +1.202.293.6330                            Telephone:    +1.215.963.5000
                                                         Facsimile:    +1.215.963.5001

                                                         Michael E. Kenneally (*pro hac vice* forthcoming)
                                                         michael.kenneally@morganlewis.com
                                                         1111 Pennsylvania Avenue, NW
                                                         Washington, DC  20004
                                                         Telephone:    +1.202.739.3000
                                                         Facsimile:    +1.202.739.3001

                                                         Catherine Eschbach (*pro hac vice* forthcoming)
                                                         catherine.eschbach@morganlewis.com
                                                         1000 Louisiana Street, 4000
                                                         Houston, TX  77002
                                                         Telephone:    +1.713.890.5000
                                                         Facsimile:    +1.713.890.5001

                                                         *Counsel for Plaintiffs*