**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| COMCAST CORPORATION, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-1401 (PTG/IDD) |
| ) | |
| U.S. DEPARTMENT OF LABOR, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants, through their undersigned counsel and pursuant to Local Civil Rule 7, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

In May of 2022, two former employees of Comcast—Lawrence Gloss and Travis Rosiek—filed federal whistleblower complaints with the United States Department of Labor ("DOL") under the Sarbanes-Oxley Act ("SOX"), claiming that Comcast retaliated against them by constructively discharging them after they raised concerns that Comcast had violated federal securities laws. Those whistleblower complaints initiated proceedings before a DOL Administrative Law Judge ("ALJ"), in which Comcast has participated since 2023. Now, however, Comcast attempts to short-circuit the administrative process before its completion by bringing this lawsuit against DOL, its Acting Secretary, and the ALJ overseeing its case. Whatever the merits of Gloss' and Rosiek's underlying whistleblower retaliation claims, Comcast's complaint should be dismissed.

As to Comcast's Seventh Amendment and Article III claim (Count I), this Court lacks subject matter jurisdiction under SOX, which channels judicial review to the courts of appeals in the first

1

instance and expressly prohibits district court jurisdiction over Comcast's collateral attack on the DOL whistleblower proceeding. For that reason alone, dismissal of Count I is warranted. In any event, Comcast also fails to state a plausible claim for relief on the merits, because its former employees' whistleblower action is equitable in nature and involves public (not private) rights, which fall outside the ambit of the Seventh Amendment and Article III. Administrative adjudication of this claim in the first instance, with review channeled directly to the courts of appeals, is permissible even in the wake of the Supreme Court's recent decision in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024).

As for Comcast's removal claim (Count II), although it is not statutorily channeled away from this Court's jurisdiction, Comcast has failed to state a plausible claim for relief. Comcast maintains that DOL ALJs adjudicating SOX whistleblower retaliation claims are subject to an unconstitutional dual-layer removal restriction, but this claim fails for two reasons. First, the Complaint puts forth no allegations to establish that the allegedly unlawful removal restrictions caused an adverse agency determination. Precedent confirms that such allegations required for any removal claim, and given their absence, this claim should be dismissed. Second, DOL ALJs are not even subject to dual-layer removal restrictions. Even if they were, because the ALJs only perform adjudicatory tasks; the Executive Branch elected in its discretion to use ALJs to adjudicate these claims; and the decisions of the ALJs are reviewable by individuals that are fully accountable to the President, the challenged scheme thus fully accords with the Constitution.

The Court should therefore dismiss Comcast's Complaint in its entirety.

## BACKGROUND

A.    **Statutory and Regulatory Framework**

1.    <u>DOL's Administrative Adjudication Process for SOX Whistleblower Claims</u>

The Sarbanes-Oxley Act was enacted in 2002 in response to a number of major corporate and accounting scandals. The statute serves to protect investors of public companies by improving the

accuracy and reliability of corporate disclosures made pursuant to the federal securities laws. *See* Pub. L. No. 107–204, 116 Stat. 745 (2002); H.R. Conf. Rep. 107–610, *1 (2002). As part of these requirements, Congress created an employee protection provision administered by the Secretary of Labor, to protect employees of publicly traded companies from retaliation for reporting violations of SEC rules and regulations internally and to the government. 18 U.S.C. § 1514A. This provision works in conjunction with 18 U.S.C. §§ 1341, 1343, 1344, and 1348, as well as rules promulgated by the SEC and other federal securities laws, by prohibiting covered entities from discharging, demoting, suspending, threatening, harassing, or in any other manner retaliating against an employee for reporting or assisting in the investigation of conduct the employee reasonably believes constitutes one of the frauds enumerated in the statute or a violation of SEC rules or regulations. *See id.* § 1514A(a).

An employee who believes that they have been subject to retaliation for whistleblowing in violation of SOX may file a complaint with the Secretary of Labor, which the Secretary investigates and adjudicates under the procedures provided in 49 U.S.C. § 42121(b). *See* 18 U.S.C. § 1514A(b); 29 C.F.R. Part 1980. The Secretary has delegated responsibility for receiving and investigating retaliation complaints under SOX to the Occupational Safety and Health Administration ("OSHA"). *See* Sec'y of Lab. Order No. 08-2020, 85 Fed. Reg. 58,393 (Sept. 18, 2020); 29 C.F.R. §§ 1980.103(b), 1980.104(a). Following investigation of a complaint, OSHA issues findings as to whether "reasonable cause" exists to believe a violation has occurred. 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1980.104(e). If OSHA finds reasonable cause, its findings will include a preliminary order providing the relief prescribed by the statute. 49 U.S.C. § 42121(b)(2)(A), (3)(B); 29 C.F.R. § 1980.105(a)(1). Under SOX, a prevailing employee is "entitled to all relief necessary to make the employee whole," including reinstatement, back pay, and compensatory damages. 18 U.S.C. § 1514A(c).

Either the employer or the complainant has 30 days to object to the preliminary order and request a hearing *de novo* before an ALJ. 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1980.106(a). Except

as provided in 29 C.F.R. Part 1980, whistleblower proceedings before the ALJ under Section 1514A are governed by the procedures in 29 C.F.R. Part 18, subpart A. 29 C.F.R. § 1980.107(a). Those rules, together with those in 29 C.F.R. Part 1980, grant the ALJ authority to manage the hearing process consistent with SOX and the Administrative Procedure Act ("APA"). The ALJ's decision is subject to discretionary review by the Department of Labor's Administrative Review Board ("ARB"). *See* 29 C.F.R. § 1982.110. The ARB's decision, in turn, is subject to discretionary review by the Secretary but becomes the final order of the Secretary if the Secretary does not exercise such review. Sec'y of Lab. Order No. 01-2020, 85 Fed. Reg. 13,186-01 (Mar. 6, 2020). If either party is unsatisfied with the Secretary's final decision, it may seek judicial review, but only in an appropriate United States Court of Appeals. 49 U.S.C. § 42121(b)(4)(A); 29 C.F.R. § 1980.112(a).[1]

        2.        <u>ALJ's Role Adjudicating SOX Whistleblower Retaliation Complaints</u>

The adjudicatory scheme vests the ALJs with limited authority, only as necessary "to conduct fair and impartial proceedings, including those described in the APA, 5 U.S.C. § 556." 29 C.F.R. § 18.12(b). In this regard, the ALJs perform an adjudicatory function, and their decisions—termed "initial determinations"—are subject to discretionary review by the ARB and the Secretary of Labor. 29 C.F.R. § 1980.110; Sec'y of Lab. Order No. 01-2020, 85 Fed. Reg. 13,186-01.

**B.**      **Factual Background**

Plaintiffs, Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast"), are publicly traded companies subject to the requirements of the Sarbanes-Oxley Act of 2002. *See* Compl. ¶¶ 3, 9. As noted above, SOX prohibits entities covered by the Act from taking any of the listed employment actions against their employees because an employee

---

[1] In the event that the Secretary of Labor "has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," a complainant may bring an action in an appropriate United States District Court. 18 U.S.C. § 1514A(b)(1)(B); 29 C.F.R. § 1980.114(a). A jury trial is available upon request by either party during such a district court proceeding. 18 U.S.C. § 1514A(b)(2)(E).

reported conduct that she or he reasonably believes constitutes one of the frauds enumerated in the statute or a violation of SEC rules or regulations. *See generally* 18 U.S.C. § 1514A. In May 2022, two former employees of Comcast, Lawrence Gloss and Travis Rosiek, filed such a complaint against Comcast with OSHA. *See* Dkt. No. 1-5, at 10; *see also* Compl. ¶¶ 10, 38-39. Gloss and Rosiek alleged that Comcast "had reduced [their] hours, reassigned, or diminished [their] duties, issued [them] poor performance evaluations, failed to pay [them] the incentive compensation to which Comcast was liable to pay [them], and discharged [them] in retaliation for complaining about Comcast's failure to report incentive compensation liability." Dkt. No. 1-5, at 10; *see also* Dkt. 1-5, at 4-9 (alleging factual basis for retaliatory conduct); Compl. ¶ 40.

OSHA investigated the former employees' allegations, and after the investigation lasted longer than 60 days, the former employees requested that OSHA end the investigation and make a determination on their respective complaints. Compl. ¶¶ 49-50; Dkt. No. 1-5, at 10. The OSHA Regional Administrator dismissed both complaints, and on April 13, 2023, the former employees appealed the dismissals to the Office of the Administrative Law Judges within DOL. Compl. ¶¶ 51-52. The cases were then consolidated and assigned to ALJ William P. Farley. Compl. ¶¶ 52-53. In their appeal, the former employees request, among other things, that Comcast "be enjoined from violating SOX whistleblower protections" and "be subject to ongoing monitoring," and be ordered to pay the former employees "their respective portions of the incentive compensation liability." Dkt. No. 1-5, at 17. Though Comcast sought to dismiss the former employees' complaint, the ALJ held that, accepting the facts in their complaint as true, the former employees had a reasonable belief that "reporting requirements to the SEC were violated" and that "[b]lowing the whistle on the failure to report [the incentive compensation] liability and the alleged retaliation makes out a prima facie case" of a SOX whistleblower retaliation claim. Dkt. No. 1-1, at 6-7. As such, the ALJ ordered that the proceedings continue. Dkt. No. 1-1, at 7.

Comcast now brings this action in this Court to cease the proceedings before the ALJ.[2] For the reasons that follow, however, Comcast's Complaint should be dismissed.

## STANDARDS OF REVIEW

**Rule 12(b)(1)**. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. The motion may either attack the court's subject matter jurisdiction by asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or may assert that as a factual matter, the plaintiff cannot meet his burden of establishing a jurisdictional basis for this suit. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under the latter approach, this Court "may consider evidence outside the pleadings" to determine whether subject matter jurisdiction exists. *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)). Moreover, "[i]t is to be presumed that a cause lies outside" a federal court's limited jurisdiction, and the "burden of establishing the contrary rests upon" the plaintiff. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**Rule 12(b)(6).** A complaint is subject to dismissal if it fails to allege facts that state a plausible claim for relief rising "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic

---

[2] When Comcast first brought this action, the ALJ hearing was scheduled to begin on November 12, 2024. Compl. ¶ 58. However, Comcast moved to stay the ALJ proceedings, and on August 13, 2024, the ALJ ordered that the proceedings be stayed pending resolution of this action. *See generally* Defendants' Exhibit ("DEX") 1.

recitation of the elements of a cause of action" are insufficient to state a plausible claim. *Id.* (internal quotation marks omitted); *Twombly*, 550 U.S. at 555.

**ARGUMENT**

**I.     COUNT I SHOULD BE DISMISSED AS THIS COURT LACKS JURISDICTION AND COMCAST FAILED TO STATE A PLAUSIBLE SEVENTH AMENDMENT AND ARTICLE III CLAIM**

**A.     Count I Should Be Dismissed Because the Court Lacks Jurisdiction Over Comcast's Claim**

Comcast's Seventh Amendment and Article III challenge to the ongoing DOL administrative proceeding is not properly before this Court. The Supreme Court has repeatedly held that district courts lack jurisdiction over claims, like Comcast's, that attempt to bypass an exclusive remedial scheme established by Congress. *See, e.g.*, *Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1 (2012); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). That remains true of Comcast's Seventh Amendment and Article III claim, even in the wake of the Supreme Court's decision in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024). *See, e.g.*, *Yapp USA Auto. Sys., Inc. v. NLRB*, ---F. Supp. 3d---, 2024 WL 4119058, at \*10-12 (E.D. Mich. Sept. 9, 2024), *stay pending appeal denied*, 2024 WL 4489598 (6th Cir. Oct. 13, 2024), *application for writ of injunction denied*, 2024 WL 4508993 (U.S. Oct. 15, 2024); *Blankenship v. Fin. Indus. Regul. Auth.*, 2024 WL 4043442, at \*2-3 (E.D. Pa. Sept. 4, 2024). At a minimum, SOX "displays a fairly discernible intent," *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 489 (2010), to channel review of Comcast's Seventh Amendment claim through DOL's administrative process, with direct review in the U.S. Courts of Appeals. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A)-(B). Because Count I falls within Section 1514A's exclusive review scheme, this Court lacks jurisdiction over this claim.

1.     <u>The Sarbanes-Oxley Act Channels Exclusive Jurisdiction to Courts of Appeals</u>

The SOX statute explicitly bars district court jurisdiction over Comcast's Seventh Amendment and Article III claim. Under Section 1514A(b)(2)(A), Congress instructed that SOX whistleblower

7

complaints brought to DOL "shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code." 18 U.S.C. § 1514A(b)(2)(A). Section 42121(b) in turn requires that judicial review of DOL administrative adjudications like this one be channeled directly to an appropriate "United States Court of Appeals." 49 U.S.C. § 42121(b)(4)(A). And Section 42121(b)(4)(B), entitled "[l]imitation on collateral attack," further provides that "[a]n order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding." *Id.* § 42121(b)(4)(B). Because the statute explicitly and exclusively channels review of Comcast's claims involving this whistleblower proceeding to the courts of appeals, this Court need look no further to confirm its lack of jurisdiction. *Accord BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("a court should always turn first to one, cardinal canon before all others . . . [it] must presume that a legislature says in a statute what it means and means in a statute what it says there").

Even assuming, *arguendo*, that SOX did not expressly bar district court jurisdiction over Count I, the test articulated by the Supreme Court in *Thunder Basin*, 510 U.S. at 207, nonetheless confirms that SOX should be construed as implicitly channeling jurisdiction over Comcast's Seventh Amendment claim to the courts of appeals alone. "[D]etermining whether Congress has impliedly divested district-court jurisdiction over agency action involves a two-step inquiry." *Bennett v. SEC*, 844 F.3d 174, 181 (4th Cir. 2016), *overruled on other grounds by Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023). "First, [courts] ask whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 207). Congress's intent is explicit here: the statute expressly and exclusively channels judicial review to "the United States Court of Appeals." 49 U.S.C. § 42121(b)(4)(A)-(B). *See Bombardier, Inc. v. DOL*, 145 F. Supp. 3d 21, 31 (D.D.C. 2015)

8

(applying *Thunder Basin* and dismissing collateral attack on DOL whistleblower proceeding for lack of jurisdiction because "49 U.S.C. § 42121(b)(4). . . . precludes judicial review in the federal district courts").

Having established that Congress intended to preclude district court jurisdiction, courts next ask "whether [plaintiffs'] claims are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212. This step involves three factors. *Id.* In order for the Court to conclude that Congress did not intend to withdraw jurisdiction over its claim, Comcast must demonstrate that: (1) "a finding of preclusion could foreclose all meaningful judicial review;" (2) "the suit is 'wholly collateral to [the] statute's review provisions;'" and (3) "the claims are 'outside the agency's expertise.'" *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212-13). *See also Bennett*, 844 F.3d at 181, 183. Comcast fails to establish any of these required factors, let alone all three. A court of appeals will hear Comcast's claims if it is aggrieved by the outcome of the pending administrative proceeding; Comcast's Seventh Amendment claim is directly related to that administrative proceeding; and the agency has expertise that is relevant to Comcast's claim.

**The first factor**—whether preclusion of district court jurisdiction would foreclose all meaningful judicial review—is the "most important." *Bennett*, 844 F.3d at 183 n.7. It is well established that "adequate judicial review does not usually demand a district court's involvement. Review of agency action in a court of appeals can alone 'meaningfully address' a party's claims." *Axon*, 598 U.S. at 190 (citing *Thunder Basin*, 510 U.S. at 215; *Elgin*, 567 U.S. at 21). The Fourth Circuit has similarly held that a statutory scheme provides "meaningful judicial review," even if it requires litigants to begin in an administrative forum, so long as an appeal to an Article III court is available "in due course." *Bennett*, 844 F.3d at 186. That is indisputably the case here. If Comcast loses before DOL, the Fourth Circuit will adjudicate its claims if Comcast desires such review. *See* 49 U.S.C. § 42121(b)(4)(A). *Cf. Thunder Basin*, 510 U.S. at 218 (finding that compliance with agency action until the review process is

9

complete is not so "onerous" or "coercive" as to deny meaningful judicial review); *YAPP*, 2024 WL 4119058, at *11 (plaintiff raising Seventh Amendment challenge to ALJ proceeding "would not be deprived of [] meaningful judicial review" because "[i]f the ALJ awards the [] remedy that [plaintiff] contests, [plaintiff] can raise the Seventh Amendment issue before the Board and then the Court of Appeals"); *Blankenship*, 2024 WL 4043442, at *2 (similar).

**The second factor** involves the extent to which a plaintiff's claims are "wholly collateral" to the statute's review provisions. *Bennett*, 844 F.3d at 186. Comcast's Seventh Amendment claim is not "wholly collateral" to the whistleblower provisions of SOX. To the contrary, the Seventh Amendment is "the vehicle by which [Comcast] seek[s] to" challenge a future decision by the agency regarding the specific remedies that may be awarded on the merits of its former employees' whistleblower retaliation claim. *Elgin*, 567 U.S. at 22 ("constitutional claims" not wholly collateral where they "are the vehicle by which [the plaintiff] seek[s] to" challenge the agency's decisions). *See, e.g.,* Compl. ¶ 11 (challenging the ALJ's ruling "that 'the relief requested in the complaint may be granted'" (quoting Dkt. No. 1-1)); *id.* ¶ 64. *Cf. YAPP*, 2024 WL 4119058, at *12 (finding Seventh Amendment challenge to ALJ proceeding precluded under *Thunder Basin* because "determining what type of remedies are appropriate or permissible under the [statute] is not 'wholly collateral' to the functioning of the [agency]"); *Blankenship*, 2024 WL 4043442, at *3 (Seventh Amendment "claims are not wholly collateral because they do not challenge [the agency's] existence, but instead depend on [the agency's] proceedings and the interpretation of its rules").

**The third and final factor** involves DOL's expertise on "the many threshold questions that [] accompany [Comcast]'s constitutional claim," *Elgin*, 567 U.S. at 22. The administrative complainants here assert their "resignations" amounted to "constructive discharges" and whistleblower retaliation by Comcast. Compl. ¶ 48. In *Elgin*, the Supreme Court held that the exact same allegation—that an employee's "resignation amounted to a constructive discharge"—fell "squarely within the [agency]'s

expertise" in the context of a similar statutory scheme and affirmed the preclusion of judicial review in the first instance, as resolution of the employee's claim in the employer's favor administratively "would avoid the need to reach [the] constitutional claims." 567 U.S. at 23. The same is true here: resolution of the underlying SOX whistleblower retaliation claim in Comcast's favor before the ALJ would avoid the need to reach its Seventh Amendment claim at all. By contrast, permitting Comcast to "bypass the administrative process" would require this Court to decide "constitutional issues . . . devoid of factual context." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 629 (7th Cir. 2007) (quotation omitted). Accordingly, "*Thunder Basin* and *Free Enterprise* . . . militate against jurisdiction when a pre-enforcement constitutional claim relates to factual issues that are the subject of a pending administrative adjudication." *Chau v. SEC*, 72 F. Supp. 3d 417, 426 (S.D.N.Y. 2014), *aff'd*, 665 F. App'x 67 (2d Cir. 2016). *See also id.* at 429 ("the entire question would be moot were [plaintiff] to prevail before the [agency]"); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (favoring review of such preliminary matters along with the agency's final order).

Comcast's attempt to bypass the administrative process and press its Seventh Amendment and Article III claim before this Court should be rejected. The statute expressly bars district court jurisdiction over Count I in its entirety. *See* 49 U.S.C. § 42121(b)(4)(B). At a minimum, SOX "displays a fairly discernible intent" to channel judicial review to the courts of appeals alone, and Comcast has failed to carry its burden of demonstrating that all three *Thunder Basin* factors permit this Court to hear its Seventh Amendment claim notwithstanding Congress's intent; in fact, Comcast has not demonstrated that even a single factor favors such review. *Free Enter. Fund*, 561 U.S. at 489. Congress has ensured meaningful judicial review of Comcast's Seventh Amendment claim, which is inextricable from the administrative proceeding pending against it and which implicates DOL's expertise, in the courts of appeals following completion of review within the agency. Permitting Comcast to bypass

this review channel and seek relief on its Seventh Amendment claim now would thus be "inimical to the structure and the purpose" of the statutory review scheme. *Thunder Basin*, 510 U.S. at 216.

> 2.    Count I is Not Exempt from Section 1514A's Jurisdictional Bar

Comcast's Complaint fails even to acknowledge that Section 1514A bars judicial review of its claims outside the courts of appeals. Instead, citing *Axon*, Comcast asserts that this Court should hear its claims anyway, alleging that "fundamental structural aspects of the DOL ALJ proceedings against it violate the Constitution" and create an "injury that cannot be remedied once the proceeding is over." Compl. ¶¶ 30, 81 (citing *Axon*, 598 U.S. at 190-96).

That argument fails because *Axon* is inapposite. The Supreme Court in *Axon* held that the plaintiffs' Article II claims were not *implicitly* precluded under *Thunder Basin*, but recognized that Congress may also preclude jurisdiction "explicitly, providing in so many words that district court jurisdiction will yield." *Axon*, 598 U.S. at 185. Because Congress's preclusion of district court jurisdiction is explicit here, *see* 49 U.S.C. § 42121(b)(4)(B), *Axon* does not apply. *See Moats v. Nat'l Credit Union Admin. Bd.*, 2024 WL 1724271, at *4 (S.D. Tex. Apr. 9, 2024) ("the court finds 12 U.S.C. § 1786(k) is an explicit bar to all of Moats's claims, constitutional or otherwise").

Moreover, the *Axon* plaintiffs raised an Article II claim where the harm suffered was "being subjected" to "unconstitutional agency authority," because "both parties object[ed] to the [agency]'s power generally, not to anything particular about how that power was wielded." *Axon*, 598 U.S. at 190, 193. But at least with respect to Comcast's Seventh Amendment claim,[3] Comcast does not challenge the mere existence of the ALJ or DOL or their power generally. Rather, this claim turns entirely upon "how [the agency's] power was wielded" in this particular ALJ proceeding. *Id. See also Elgin*, 567 U.S.

---

[3] Defendants do not contest that Comcast's removal challenge (Count II) falls outside of Section 1514A's statutory scheme for judicial review (although Count II fails to state a claim in any event, *see infra*, Part II). *See K&R Contractors, LLC v. Keene*, 86 F.4th 135, 146 (4th Cir. 2023) (distinguishing a structural removal claim from a constitutional challenge that merely contests "how the Department of Labor *applied* its . . . power" (quotation omitted)).

at 20. Specifically, Comcast's Seventh Amendment claim rests on whether the SOX Act and the specific features of Gloss' and Rosiek's SOX whistleblower retaliation claims (including the type of relief that is ultimately awarded) sufficiently resemble traditional common law causes of actions with legal remedies implicating private rights. *See* Compl. ¶¶ 62-75. Comcast's Seventh Amendment claim is thus different in kind to the structural Article II claims raised in *Axon*. And "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding . . . , especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023).

Also essential to the Supreme Court's decision in *Axon* was the fact that the harm of "being subjected" to "unconstitutional agency authority" under Article II was "impossible to remedy once the proceeding is over, which is when appellate review kicks in" under the applicable judicial review statutes for the FTC and SEC. 598 U.S. at 191. But unlike the Article II claims in *Axon*, Comcast's claim *can* be remedied by a court of appeals. If the ALJ ultimately awards a legal remedy that Comcast contests, Comcast can assert its Seventh Amendment arguments to the Fourth Circuit, which (should they find merit in Comcast's constitutional claim) could simply invalidate those remedies that—in their view—render DOL's final order unconstitutional while retaining the remainder of the final order, "exactly as Congress intended." *YAPP*, 2024 WL 4119058, at *11 (rejecting argument that Seventh Amendment claim would be denied meaningful judicial review through administrative process). This Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when, as is true here, Congress has expressly precluded district court jurisdiction and the statutory channels of review are entirely adequate for the claim alleged.

13

**B.    Count I Should Be Dismissed in Any Event, as Comcast Failed to Plausibly Allege that DOL's Adjudication of SOX Whistleblower Retaliation Claims Violates the Seventh Amendment or Article III**

Because it lacks jurisdiction, the Court need not consider the merits of Comcast's Seventh Amendment and Article III claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). But in any event, Comcast has also failed to state a plausible claim on Count I, which contends that DOL's administrative adjudication of SOX whistleblower complaints violates Comcast's right to a jury trial and infringes on the federal judiciary's purview under Article III. Compl. ¶¶ 60-84.

The Seventh Amendment preserves the "right of trial by jury" in "suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. And Article III vests the "judicial Power" in the federal courts. U.S. Const. art. III, § 1. The two-part test articulated by the Supreme Court in *Jarkesy* confirms that neither the Seventh Amendment nor Article III is implicated here. *See* 144 S. Ct. at 2127. "The threshold issue is whether this action implicates the Seventh Amendment." *Id.* Then, courts "consider whether the 'public rights' exception to Article III jurisdiction applies." *Id.*

1.    <u>The Seventh Amendment Does Not Apply Where, as Here, the Suit is Equitable in Nature</u>

The Seventh Amendment only "extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 2128 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). Just last term, the Supreme Court in *SEC v. Jarkesy*, 144 S. Ct. 2117, provided guidance regarding how courts should decide whether a suit is "legal in nature," identifying two factors for consideration: "the cause of action and the remedy it provides." 144 S. Ct. at 2129. There, the Court determined that SEC's securities fraud action seeking civil penalties was analogous to common law fraud actions historically brought in the courts of law, such that the Seventh Amendment right to a jury trial was implicated. *Id.*

In contrast with *Jarkesy* itself, application of the two factors to SOX Section 1514A makes clear that the Seventh Amendment is not implicated in this case. "Since some causes of action sound

14

in both law and equity," the Supreme Court "concluded that the remedy was the 'more important' consideration." *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)). Here, Comcast notes that its former employees seek monetary relief, and asserts that such relief is a legal remedy. Compl. ¶¶ 64-65. But as the Supreme Court recognized in *Jarkesy*, "monetary relief can be legal or equitable." 144 S. Ct. at 2129. Rather, "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" *Id.* (quoting *Tull*, 481 U.S. at 422). Restitution differs from a penalty in that the former seeks only to "restor[e] the status quo and order[] the return of that which rightfully belongs to the [plaintiff]." *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). In *Jarkesy*, the statutes at issue conditioned the availability and size of the civil penalties obtainable by the agency on considerations such as "culpability, deterrence, and recidivism." 144 S. Ct. at 2129. Because the securities statutes "tie[d] the availability of civil penalties to the perceived need to punish the defendant rather than to restore the victim," the Supreme Court concluded that the civil penalties remedy sought by the SEC was a legal penalty rather than equitable restitution, thus triggering the Seventh Amendment. *Id.*

SOX, by contrast, limits the relief available to a prevailing whistleblower to the "relief necessary to make the employee whole," including, most prominently, reinstatement and back pay. 18 U.S.C. § 1514A(c)(1)-(2). The Supreme Court has observed that monetary remedies like back pay are purely equitable when, as in the case of Section 1514A, they are statutorily made an integral part of overall relief designed to make an employee whole. *See West v. Gibson*, 527 U.S. 212, 217 (1999); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572 (1990). Indeed, none of the punitive factors found determinative in *Jarkesy* are present in Section 1514A. *Compare Jarkesy*, 144 S. Ct. at 2129 (citing 15 U.S.C. §§ 78u–2(c), 80b–3(i)(3)), *with* 18 U.S.C. § 1514A(c). Rather, the statutory remedies authorized by Section 1514A are designed merely to "restore the status quo" for the prevailing whistleblower, so the Seventh Amendment is not implicated. *Jarkesy*, 144 S. Ct. at 2129. *See*

*also Deltek, Inc. v. DOL ARB*, 649 F. App'x 320, 333 (4th Cir. 2016) (holding that "front pay is an equitable remedy" under SOX).

The specific statutory relief sought by Comcast's former employees here is also equitable, and "necessary to make the employee[s] whole." 18 U.S.C. § 1514A(c)(1). Comcast's attempt to analogize its former employees' request for equitable monetary restitution to "breach of contract damages" misses the mark. Compl. ¶ 64. Rather, "the percentage incentive liability Comcast promised [the former employees]," *id.*, is tantamount to wrongfully withheld front pay, as it is "'designed to place the complainant in the identical financial position' that [he] would have occupied had [he] remained employed or been reinstated." *Deltek*, 649 F. App'x at 333 (approving front pay award in SOX whistleblower case as "necessary to make the employee whole" under § 1514A(c)(1)) (citation omitted). Statutorily-authorized front pay has been held to be "an equitable remedy" time and again in this context, particularly when sought in lieu of reinstatement. *Id.* at 333-34. *See also Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022) (collecting cases); *Jarkesy*, 144 S. Ct. at 2129 (confirming that "courts of equity could order a defendant to return unjustly obtained funds").

Because SOX provides solely for relief "necessary to make the employee whole," 18 U.S.C. § 1514A(c)(1), the remedy factor "is all but dispositive" of Comcast's claim. *Jarkesy*, 144 S. Ct. at 2129. *See id.* (emphasizing the remedy factor, "[s]ince some causes of action sound in both law and equity").

Moreover, the second *Jarkesy* factor—the "relationship between the causes of action in this case and common law," *Jarkesy*, 144 S. Ct. at 2130—also weighs toward dismissal here, because a SOX whistleblower retaliation claim is not closely analogous to a cause of action at common law. Comcast alleges that a Section 1514A whistleblower claim is analogous to a "common-law claim for wrongful discharge," Compl. ¶ 68. Not so. As the Supreme Court of Virginia made plain in *Ligon v. County of Goochland*, a statutory "'whistleblower protection' provision . . . provides a limited cause of action unknown at common law." 689 S.E.2d 666, 669 (Va. 2010) (citing *Dray v. New Mkt. Poultry Prods., Inc.*,

16

518 S.E.2d 312, 313 (Va. 1999)) (refusing to recognize common law exception to the at-will employment doctrine where a plaintiff reported allegedly unsanitary conditions in her poultry plant to government inspectors); *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915 (Va. 1987)). Courts in this District have likewise dismissed cases predicated on the existence of common law whistleblower retaliation claims, because such claims do not exist. *See, e.g.*, *Lambert v. Whiting Turner Contractor*, 2016 WL 2946176, at *5 (E.D. Va. May 19, 2016) (Lee, J.) (refusing to "recognize a common-law 'whistleblower' action for retaliatory discharge"). Nor is Comcast's analogy to a breach of contract action persuasive, for the reasons set forth above. *See supra*, at 16. In other words, the common law did not give Comcast's former employees any right to relief for whistleblower retaliation in this context. This right derives exclusively from Section 1514A, which establishes an equitable cause of action and provides relief "solely to 'restore the status quo.'" *Jarkesy*, 144 S. Ct. at 2129 (quoting *Tull*, 481 U.S. at 422). Because the Seventh Amendment does not apply to actions that are equitable in nature like Gloss' and Rosiek's SOX whistleblower retaliation claim, Comcast fails to allege a plausible claim.

> 2.  DOL's Administrative Adjudication of Public Rights Under Section 1514A is Consistent with Both the Seventh Amendment and Article III

Count I should also be dismissed because Comcast's assertion that the claims raised in its former employees' Section 1514A complaint can only be litigated before a jury in an Article III court is incorrect. *See* Compl. ¶¶ 72-75. As the Supreme Court has explained, Article III vests the judicial power of the United States in the federal courts and Congress cannot confer that power on entities outside of Article III. *Stern v. Marshall,* 564 U.S. 462, 484 (2011). To ascertain "whether a proceeding involves an exercise of Article III judicial power," the Supreme Court's "precedents have distinguished between 'public rights' and 'private rights.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 333–34 (2018). Congress may "properly assign[] a matter to adjudication in a non-Article III tribunal" when it involves public rights and, in such cases, "'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" *Oil States*, 584 U.S. at 345

(quoting *Granfinanciera*, 492 U.S. at 53-54). *See also City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013) ("Agencies make rules . . . and conduct adjudications . . . and have done so since the beginning of the Republic.").

No jury in an Article III court is required here because Section 1514A claims involve public rights. The Supreme Court reaffirmed the public-rights doctrine in *Jarkesy*, explaining that a civil penalty action brought under OSHA in *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977), fell within the public-rights exception because OSHA's "purpose . . . was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Jarkesy*, 144 S. Ct. at 2137. Rather, OSHA was "self-consciously novel" in "both concept and execution." *Id.*[4] *See also NLRB v. Jones & Laughlin Steel Corp.*, 301 US 1, 48 (1937). And in *Granfinanciera*, the Supreme Court instructed that "[t]he crucial question, in cases not involving the Federal Government, is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, has created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution.'" 492 U.S. at 54 (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 593-94 (1985)). In either scenario, the public-rights exception applies. Additionally, the Court must presumptively consider Congress's assignment of SOX whistleblower adjudications to DOL to be constitutional. *See id.* at 61 ("To be sure, we owe some deference to Congress' judgment after it has given careful consideration to the constitutionality of a legislative provision.").

The whistleblower protection provision of SOX (Section 1514A) shares both of these public-rights characteristics: it is both self-consciously novel and closely integrated into a public regulatory scheme. The Sarbanes-Oxley Act was enacted "[t]o safeguard investors in public companies and

---

[4] Although *Jarkesy* was critical of the dissent's reading of *Atlas Roofing*, the Court declined to overrule *Atlas Roofing*, 144 S. Ct. at 2136-39, which "remain[s] binding precedent" on this Court. *See Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (*per curiam*).

restore trust in the financial markets following the collapse of Enron Corporation." *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014). "Of particular concern to Congress was abundant evidence that Enron had succeeded in perpetuating its massive shareholder fraud in large part due to a corporate code of silence that discouraged employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 27 (2024) (citation omitted). As the Supreme Court noted in *Lawson*, Enron's "outside counsel [had] advised company officials at the time [that] Enron's efforts to 'quiet' whistleblowers generally were not proscribed under then-existing law." 571 U.S. at 435.

Because "then-existing law" did not protect whistleblowers like those at Enron (and those at Comcast today), Congress passed the "self-consciously novel" whistleblower provisions of Section 1514A to protect employees of publicly traded companies who report fraud and violations of SEC rules and regulations internally and to the government. *Jarkesy*, 144 S. Ct. at 2137; *see also Lawson,* 571 U.S. at 435. "The purpose of this regime was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Jarkesy*, 144 S. Ct. at 2137. Rather, Section 1514A establishes novel protections which are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Thomas*, 473 U.S. at 594. Indeed, Congress identified the prior absence of whistleblower protection as "'a significant deficiency' in the law, for in complex securities fraud investigations, employees 'are [often] the only firsthand witnesses to the fraud.'" *Lawson*, 571 U.S. at 434-35 (citing S. Rep. No. 107-146, at 10 (2002)). Courts have long held that DOL's adjudication of claims under whistleblower protection statutes, including Section 1514A, thus involve "public rights" that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Yellow Freight Sys., Inc. v. Martin*, 983 F.2d 1195, 1200-01 (2d Cir. 1993) (rejecting Article III and Seventh Amendment challenges to DOL adjudication of whistleblower claim under the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105). *See*

*also Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 806-07 (N.D. Cal. 2008) (same as to whistleblower claims under SOX, 18 U.S.C. § 1514A). *Jarkesy* did not upset that framework; Section 1514A whistleblower retaliation claims remain public-rights actions today.

For similar reasons, Comcast has not plausibly alleged that DOL's SOX whistleblower adjudication process independently violates Article III. Preliminarily, *Jarkesy* was a Seventh Amendment case; the Supreme Court did not consider how Article III applies to agency adjudications. *See, e.g., Jarkesy*, 144 S. Ct. at 2139–40 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the [SEC]'s use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial."). Further, and more substantively, *Jarkesy* dealt with a securities fraud action brought by the federal government in its sovereign capacity—but "[t]he public-rights analysis in [] private-dispute cases looks different." *Jarkesy*, 144 S. Ct. at 2169 (Sotomayor, J., dissenting) (citing *Granfinanciera*, 492 U.S. at 54). Because this action was brought against Comcast by its former employees, seeking to recover for violations of "statutory rights that are integral parts of a public regulatory scheme," the *Thomas* and *Granfinanciera* public rights framework applies and *Jarkesy* lends no support to Comcast's Article III claim. *Granfinanciera*, 492 U.S. at 54-55, n.10; *Thomas*, 473 U.S. at 593-94. Even if *Jarkesy*'s discussion of the public-rights exception to the Seventh Amendment implicated Article III questions that the Supreme Court did not address, Comcast's Article III claim would still fail to state a claim for the reasons set forth above. *See supra*, at 17-19.

## II.    COUNT II SHOULD BE DISMISSED AS COMCAST FAILED TO STATE A PLAUSIBLE SEPARATION OF POWERS VIOLATION

Article II provides that "[t]he executive Power shall be vested in a President," who must "take Care that the Laws be faithfully executed." U.S. Const. art. II §§ 1, 3. Because "[t]he entire 'executive Power' belongs to the President alone," the Supreme Court has found that executive "officers must remain accountable to the President, whose authority they wield." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). That accountability "generally includes the ability to remove executive officials, for it

is 'only the authority that can remove' such officials that they 'must fear and, in the performance of [their] functions, obey." *Id.* at 213-14 (alteration in original) (quotation omitted).

When faced with an allegedly unconstitutional removal protection, a Court's inquiry focuses first on whether the plaintiff has put forth sufficient facts to show that it has incurred a compensable injury because of the allegedly unlawful removal restrictions. *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Collins v. Yellen*, 594 U.S. 220, 257-58 (2021). Here, Comcast does not plead any facts establishing the plausibility that the removal restrictions were the but-for cause of any agency action adverse to it. Were the Court to reach the constitutionality of the challenged statutory provisions, however, it should find the removal protections for DOL ALJs are constitutionally sound. Comcast incorrectly claims that DOL ALJs are subject to two layers of for-cause protections. However, DOL ALJs may be removed by the Acting Secretary of Labor, who is herself removable at will by the President. Sec'y of Lab. Order No. 07-2018, 83 Fed. Reg. 44,307, 44,307 (Aug. 30, 2018) (appointment and removal of ALJs); 29 U.S.C. § 551 (appointment and removal of Secretary of Labor). Although the Merit Systems Protection Board ("MSPB") reviews the Secretary's decision to remove an ALJ, that MSPB review does not change the constitutional calculus as it is part of a constitutionally permissible single-layer removal scheme. Even if it did—thus accepting Comcast's contention that there is a dual-layer removal scheme at issue in this case—such a scheme would be constitutional for at least three reasons. First, DOL ALJs perform purely adjudicatory functions. Second, it was the executive, not Congress, who chose to use ALJs to conduct DOL whistleblower retaliation complaints. Finally, third, DOL ALJs issue only initial determinations that are subject to potential vacatur upon further review within the DOL, including by the Secretary.

### A.      Comcast has Not Pled any Allegations to Establish a Plausible Compensable Remedy from the Scheme

For its removal claim to survive, Comcast must put forth sufficient allegations to establish the plausibility of the conclusion that it has suffered a compensable injury caused by the challenged

removal provision. *See Collins*, 594 U.S. at 259. Stated differently, establishing the plausibility of a separation of powers violation based on an allegedly unconstitutional removal restriction alone is insufficient to plead a successful removal claim because "the actions of a lawfully appointed executive officer fulfilling the duties of his office are legitimate and enforceable, even if the President's authority to remove the officer was unconstitutionally limited during his tenure." *K&R Contractors*, 86 F.4th at 149; *accord Collins*, 594 U.S. at 257-58.

Thus, the Complaint must set forth sufficient facts to plausibly establish that the allegedly unconstitutional removal scheme interfered with the President's ability to take a course of action that favors Comcast. *See Collins v. Dep't of Treasury*, 83 F.4th 970, 982-83 (5th Cir. 2023) ("This means that plaintiffs must allege sufficient facts plausibly to claim that 'but for the removal restriction' the Trump Administration would have exited the conservatorships and returned the companies to private control."); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 757 (10th Cir. 2024); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180-81 (2d Cir. 2023); *Calcutt v. FDIC*, 37 F.4th 293, 318 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023) (per curiam); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022). As *Collins* illustrates, examples of such a compensable harm for a successful removal claim include the following: "'the President had attempted to remove [the officer] but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal,' or [that] 'the President had made a public statement expressing displeasure with actions taken by [the officer] and had asserted that he would remove [him] if the statute did not stand in the way.'" *K&R Contractors*, 86 F.4th at 149 (alterations in original) (quoting *Collins*, 594 U.S. at 259-60).

Applying this rule here, Comcast's allegations fall short. Nowhere in the Complaint does Comcast allege that the allegedly unlawful dual-layer removal scheme was the but-for cause of any adverse agency determination. Indeed, the Complaint does not mention any action or statement of the President at all. *See generally* Compl. Instead, it suggests that "even if a President does not actively

22

desire to remove a particular ALJ, [the harm exists] because the mere potential for removal influences how rational ALJs carry out their duties." Compl. ¶ 96. But precedent confirms that such generalized assertion of an injury is insufficient to establish the compensable injury needed for a plausible removal claim. Rather, there must be some assertion that the President attempted to remove ALJ Farley and that but for that attempt, the course of the pending administrative proceedings (now stayed) would have changed. *See K&R Contractors*, 86 F.4th at 149-50.

Perhaps recognizing this deficiency in their Complaint, Comcast nevertheless contends that the Court can still award declaratory relief. Compl. ¶ 98. Not so. Such a request is tantamount to a request for an advisory opinion from this Court. Any declaratory judgment this Court might issue cannot furnish any relief when there is no compensable injury. *Leacho, Inc.*, 104 F.4th at 757-58 (affirming denial of preliminary injunction for claims seeking prospective injunctive relief and declaratory relief); *Calcutt*, 37 F.4th at 316 (the harm requirement demanded by *Collins* "remains the same whether the petitioner seeks retrospective or prospective relief"); *YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024) ("*Calcutt* explicitly stated that the distinction between prospective and retrospective relief does not matter."); *see also California v. Grace Brethren Church*, 457 U.S. 393, 394 (1982) (noting that "there is little practical difference between injunctive and declaratory relief"). As noted above, that ALJ Farley *may* be subject to an unconstitutional removal provision does not mean that any action taken by him is *per se* unlawful. *Collins*, 594 U.S. at 257-58 & n.24. To the contrary. By *not* challenging the validity of ALJ Farley's appointment, Comcast concedes that his actions are lawful. *See id.* at 257. Thus, any judgment on the constitutionality of the removal provision does not alter the course of any aspect of these underlying administrative proceedings.

Moreover, Comcast's reliance on *Free Enterprise Fund* for the contrary proposition is misplaced. Compl. ¶ 98. As the Supreme Court explained in *Collins*, there is a clear dichotomy between entitlement to a remedy for purposes of Article III standing and entitlement to a remedy based on a

removal claim. *Collins*, 594 U.S. at 258 n.24. The former is effectively established when a party brings a collateral challenge in federal district court to the constitutionality of the agency's structure (*e.g.*, separation-of-powers claims). *See supra*, Part I.A.2; *Axon*, 598 U.S. at 180. The latter is established, however, only when an aggrieved plaintiff establishes that the allegedly unconstitutional removal provision was the but-for cause of the challenged agency action. *Collins*, 594 U.S. at 258 n.24 ("What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction.")[5]; *Leacho, Inc.*, 103 F.4th at 758-60 (explaining the legal dichotomy on this point at length).

All told, with no allegations establishing a plausible compensable injury caused by the allegedly unconstitutional removal provision, Count II should be dismissed.

### B. DOL ALJs May be Removed by the Secretary of Labor for Good Cause and are Subject to One Layer of Constitutionally Permissible Removal Restrictions

In any event, Comcast's removal claim should be dismissed because DOL ALJs' tenure protections pose no constitutional problem. Where "only one level of protected tenure separate[s] the President from an officer exercising executive power," there is no constitutional removal problem because "[i]t [is] the President—or a subordinate he c[an] remove at will—who decide[s] whether the officer's conduct merit[s] removal under the good-cause standard." *Free Enter. Fund*, 561 U.S. at 495. That is precisely the case here. DOL ALJs may be removed for "good cause" by the Secretary of Labor, 5 U.S.C. § 7521(a), who is herself removable at will by the President, *Myers v. United States*, 272 U.S. 52, 126-27 (1926) ("[T]he power of appointment to executive office carries with it, as a necessary incident, the power of removal.").[6]

---

[5] *Seila Law*'s standing holding was based on the same principles at issue in *Free Enterprise Fund* upon which Comcast relies. *See Seila Law*, 591 U.S. at 210-13 (discussing *Free Enterprise Fund* to support holding that party has remedy available to challenge an agency's structural provisions).

[6] For this reason, Plaintiff's reliance on the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) is misplaced. Compl. ¶¶ 26, 88. The court there found that the principal officers (SEC Commissioners) responsible for removing SEC ALJs were removable by the President only for cause,

24

That single layer of removal restrictions is constitutional. *See Morrison v. Olson*, 487 U.S. 654, 691-93 (1988) (upholding a statute that allowed the Attorney General to remove an inferior officer for "good cause"); *Seila Law*, 591 U.S. at 204 ("Congress [may] provide tenure protections to certain *inferior* officers with narrowly defined duties."); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021) (holding that "the President has sufficient control over DOL ALJs to satisfy the Constitution").

Comcast nonetheless alleges that the MSPB's involvement creates "two layers of removal protection" such that it "impermissibly restricts presidential authority and thus violates Article II of the Constitution." Compl. ¶ 92. But that allegation overstates the role of the MSPB. The law provides that an ALJ may be removed "*by the agency in which the administrative law judge is employed* only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a) (emphasis added). The MSPB does not decide whether an ALJ should be removed; rather, the head of the employing agency (here, the Secretary of Labor) determines whether to remove an ALJ for good cause; the MSPB is merely responsible for determining whether the agency properly invoked "good cause." Even the MSPB understands that to be its role. *HHS v. Jarboe*, 2023 M.S.P.B. 22, ¶ 6 (2023); *SSA v. Levinson*, 2023 M.S.P.B. 20, ¶¶ 37-38 (2023).

That independent examination creates no additional layer of removal restriction. The Supreme Court has previously upheld removal schemes where the decision to remove an inferior officer protected from at-will removal was reviewable in an Article III court. *Morrison*, 487 U.S. at 663-64, 686-93 (review by Article III court empowered to order "reinstatement or 'other appropriate relief'" (quoting 28 U.S.C. § 596(a)(3))); *see also United States v. Perkins*, 116 U.S. 483, 483-85 (1886). This is because the "possibility of judicial review does not inject the Judicial Branch into the removal decision,

---

*Jarkesy*, 34 F.4th at 463-64; Comcast offers no basis for such a finding here. Moreover, the vigorous and well-reasoned dissent in that case also explains why the majority was wrong on its own terms. *Id.* at 478 (Davis, J., dissenting).

nor does it, by itself, put any additional burden on the President's exercise of executive authority." *Morrison*, 487 U.S. at 693 n.33. That same principle held true in *Perkins* too, where it was solely for the federal courts to determine if the Navy officer at issue had been properly removed. 116 U.S. at 485. And if it is constitutional for an Article III court—wholly beyond the control of the President as its judges are only removable by Congressional impeachment—to adjudicate whether cause for removal has been demonstrated, it is *a fortiori* constitutional for the MSPB (which is *more* accountable to the President as its members can be removed by the President for cause) to conduct the same adjudication because doing so does not "put any additional burden on the President's exercise of executive authority." *Morrison*, 487 U.S. at 693 n.33. *Compare* U.S. Const. art. III, § 1 (judges "shall hold their Offices during good Behaviour"), *with* 5 U.S.C. § 1202(d) (MSPB members may be removed "by the President only for inefficiency, neglect of duty, or malfeasance in office").

DOL ALJs are removable by the Secretary of Labor for good cause, and nothing about MSPB review transforms that into an impermissible removal scheme. To hold otherwise would have remarkable implications through the Executive Branch. Such a result was expressly outside of the Supreme Court's reasoning in *Free Enterprise Fund*, 561 U.S. at 507 ("Nothing in our opinion, therefore, should be read to cast doubt on the use of what is colloquially known as the civil service system within independent agencies."); *see also id.* at 507 n.10.

**C.    Even if DOL ALJs Adjudicating SOX Whistleblower Retaliation Claims are Protected by Two Layers of Removal Restrictions, that Scheme is Constitutional**

For all of these reasons, DOL ALJs are subject to one layer of for-cause removal restrictions; however, even if the Court interprets 5 U.S.C. § 7521(a) as providing two layers of protections, those restrictions would not be unconstitutional.

There is no blanket rule against dual-layer for-cause removal protections for inferior officers like DOL ALJs. When the Supreme Court struck down the specific for-cause protections at issue in

*Free Enterprise Fund*, it took great pains to emphasize that it was not declaring a generally applicable rule prohibiting two layers of removal writ large. Rather, the Court emphasized the unique nature of the inferior officers in question—members of the particularly powerful Public Company Accounting Oversight Board ("PCAOB")—and the "unusually high" and specific standards for removal. 561 U.S. at 502-03. And the Supreme Court made clear that the decision did not address removal restrictions on administrative law judges, or others in the civil service. *Id.* at 507 n.10.

DOL ALJs differ from the officers at issue in *Free Enterprise Fund* in myriad ways, each of which would render any dual-layer for-cause protection constitutionally unproblematic. *See generally Decker Coal*, 8 F.4th at 1133-36 (upholding constitutionality of 5 U.S.C. § 7521 as applied to DOL ALJs adjudicating claims under Black Lung Benefits Act).

**First**, unlike the PCAOB, DOL ALJs perform purely adjudicatory functions in hearing and deciding the cases presented to them. To the contrary, Congress granted the PCAOB "expansive powers to govern an entire industry" and "substantial executive authority," including the authority to "promulgate[] auditing and ethics standards, perform[] routine inspections of all accounting firms, demand[] documents and testimony, and initiate[] formal investigations and disciplinary proceedings," *Free Enterprise Fund*, 561 U.S. at 485, 505. DOL ALJs have far more limited authority. *See id.* at 507 n.10 (noting that "many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions"). To be sure, the DOL ALJs wield executive authority as Comcast alleges, Compl. ¶ 88, but that does not mean the exercise of their adjudicatory functions is tantamount to a constitutionally problematic wielding of "substantial executive authority." *Free Enter. Fund*, 561 U.S. at 505. For one thing, ALJs can only hear the cases brought before them, and thus cannot go out searching for policymaking opportunities. *Decker Coal*, 8 F.4th at 1133 (explaining that DOL ALJs "cannot sua sponte initiate investigations or commence a . . . case"); 49 U.S.C. § 42121(b)(2)(A) (establishing that a "hearing on the record" before ALJ is only authorized after a

whistleblower retaliation complaint is initiated). And, like Article III judges, ALJs are confined to applying the law to particular facts, rather than making policy of their own choosing. Court decisions can also affect policy—such as by vacating a federal regulation or declaring a statute unconstitutional—but rendering those decisions is nevertheless an adjudicative task.

As precedent confirms, DOL ALJs "perform adjudicative functions" by taking "evidence and resolv[ing] contested questions of fact and law." *K&R Contractors*, 86 F.4th at 140, 148. *Compare* 5 U.S.C. § 556(c) *and* 20 C.F.R. § 725.455 (authority of DOL ALJs under Black Lung Benefits Act), *with* 29 C.F.R. § 18.12 (authority of DOL ALJs under SOX). And that fact bears constitutional significance: the Constitution tolerates more restrictions upon the President's ability to remove those inferior officers serving in adjudicative roles rather than those exercising purely executive functions. *See Decker Coal*, 8 F.4th at 1133 ("ALJs perform only adjudicatory functions . . . that arguably would not be considered 'central to the functioning of the Executive Branch' for purposes of the Article II removal precedents.") (quoting *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 699 n.8 (D.C. Cir. 2008) (Kavanaugh, J., dissenting))); *see also Leacho, Inc.*, 103 F.4th at 764 (rejecting challenge to CPSC ALJs' removal scheme and "find[ing] the Ninth Circuit's analysis in *Decker Coal* persuasive").

**Second**, Congress did not mandate the use of ALJs in connection with SOX whistleblower retaliation claims, and did not mandate the purportedly dual-layered removal scheme.[7] Rather, the Secretary of Labor delegated the authority that requires SOX whistleblower retaliation claims to

---

[7] Additionally, the restrictions on removal at issue in *Free Enterprise Fund* went well beyond "an 'ordinary' dual for-cause standard." 561 U.S. at 502-03. Rather than simply requiring that PCAOB members be removable only for good cause, Congress mandated 'unusually high' and specific standards for removal, including "willful violations of the [SOX], Board rules, or the securities law; willful abuse of authority; or unreasonable failure to enforce compliance" with the Act. *Id.* As the Supreme Court noted, these removal restrictions "d[id] not even give the [Securities Exchange] Commission power to fire Board members for violations of *other* laws that do not relate to the Act, the securities laws, or the Board's authority." *Id.* at 503. No such heightened restrictions here. *See id.* at 506 ("Nor do the employees referenced by the dissent enjoy the same significant and unusual protections from Presidential oversight as members of the Board.").

proceed before an ALJ at the conclusion of OSHA's investigation into the complainant's allegations and after a party requests a hearing. 49 U.S.C. § 42121(b)(2)(A). Indeed, Congress directed that a party must request a "hearing on the record" if she or he objects to OSHA's investigatory findings. *Id.* It is DOL's regulations that impose the requirement that an ALJ preside over these hearings. *See* 29 C.F.R. § 1980.106; 80 Fed. Reg. 11,865, 11,875 (Mar. 5, 2015). Thus, "Congress did not overstep here." *Decker Coal*, 8 F.4th at 1133; *see also K&R Contractors*, 86 F.4th at 148 ("A statutory *requirement* to use ALJs who Congress has insulated from the President's removal authority by two layers of for-cause tenure protection, brings the separation-of-powers question into sharp relief." (emphasis added)).

Thus, it was the Executive Branch, in its own discretion, that chose to use ALJs under this statutory review scheme, and thus accepted the good-cause requirement for removal as part of that choice. As the Ninth Circuit held with respect to DOL ALJs adjudicating claims under the Black Lung Benefits Act, there is no removal-power issue where the Executive Branch elected to use ALJs with removal protections, as "[t]he President has broad executive power to order [the agency head] to change the [agency]'s regulatory scheme and remove ALJs from the adjudicatory process." *Decker Coal*, 8 F.4th at 1134; *see also id.* at 1133; *Free Enter. Fund*, 561 U.S. at 497 (observing that "[t]he President can always choose to restrain himself in his dealings with subordinates"). Accordingly, the good-cause removal restriction that protects DOL ALJs, especially given their limited adjudicatory role, causes no "interfere[nce] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison*, 487 U.S. at 690.

**Third and lastly**, any decision by a DOL ALJ is not necessarily the final determination on any case before that ALJ. Rather, an ALJ's decision is first subject to discretionary review by the ARB, 29 C.F.R. § 1982.110(b), (d)-(e), and any decision of the ARB is subject to discretionary review by the Secretary of Labor, Sec'y of Lab. Order No. 01-2020, 85 Fed. Reg. 13,186-01 (Mar. 6, 2020). The members of the ARB, like the Secretary of Labor, are removable from the ARB at will. *See* 85 Fed.

Reg. at 13,188-01 ("Appointment of a Member of the Board to a term not to exceed some time period *shall not* affect the authority of the Secretary to remove any Member *at any time prior to the completion of the term*, consistent with applicable law." (emphases added)). That is significant, for as the Ninth Circuit held in the Black Lung Benefits Act context, the DOL ALJ removal restrictions were constitutional in part because the ALJs "make decisions that are subject to vacatur by people without tenure protection." *Decker Coal*, 8 F.4th at 1135. That reasoning applies with equal force here notwithstanding the fact that review by the ARB and Secretary of Labor are discretionary in nature. Though subsequent review of the ALJ's determination is discretionary, that the ARB members and Secretary of Labor are subject to at-will removal empowers the President to transform what would ordinarily be a discretionary review to a mandatory one. And to that end, the President is equally empowered to control the ARB's and the Secretary of Labor's secondary review of the ALJ's decision as the law and facts permit. For all of these reasons, regardless of any tenure protections for DOL ALJs, the ALJs' decisions are not insulated from beyond the President's reach: they can be reviewed at least twice over.

Thus, Comcast's removal claim should be dismissed as no plausible separation of powers violation has been pled in the Complaint.

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

//

//

//

30

Dated: October 22, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DENNIS C. BARGHAAN, JR.
Chief, Civil Division

CHRISTOPHER HALL
JULIE STRAUS HARRIS
Assistant Directors, Federal Programs Branch

_____/s/_____
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email:  Matthew.Mezger@usdoj.gov

ANDREW J. RISING
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-0265
Email: Andrew.J.Rising@usdoj.gov

*Counsel for Defendants*

31