**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

COMCAST CORPORATION, *et al.*,       )
                                     )
       *Plaintiffs*,                   )
                                     )
v.                                   )       No. 1:24-cv-1401 (PTG/IDD)
                                     )
U.S. DEPARTMENT OF LABOR, *et al.*,  )
                                     )
       *Defendants*.                   )

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 23. Defendants are the United States Department of Labor ("DOL"); Julia A. Su, in her official capacity as Acting Secretary of Labor; and William P. Farley, in his official capacity as Administrative Law Judge ("ALJ"). In 2022, two former employees of Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast") filed a whistleblower complaint, alleging Comcast violated the Sarbanes-Oxley Act of 2002.[1] DOL ALJ Farley presided over the proceedings. On August 9, 2024, Comcast filed a two-count complaint against Defendants alleging that the DOL proceedings violated provisions of the United States Constitution. Dkt. 1 ("Compl."). Count I alleges that the underlying proceeding before an ALJ violates Comcast's Seventh Amendment right to a trial by

---

[1] In the underlying administrative complaint, the two former employees named "Comcast" and Comcast Cable Communications Management, LLC as respondents. Dkt. 1 at 7 n.1. There is no entity named "Comcast." *Id.* In actuality, Comcast Corporation is the proper party in the administrative proceeding, and as such, Comcast Corporation is seeking relief here. *Id.*

jury and Article III. *Id.* ¶ 20. Count II alleges that the proceeding before the ALJ violates Article II because the ALJ is impermissibly insulated from Executive Power. *Id.* ¶¶ 21–22.[2]

In their Motion, Defendants seek to dismiss both counts. As to Count I, Defendants claim that this Court lacks subject matter jurisdiction because the Sarbanes-Oxley Act explicitly limits judicial review to the Courts of Appeals and, even if this Court had subject matter jurisdiction, Comcast did not state a claim for a Seventh Amendment or Article III violation. Dkt. 24 at 7–20. As to Count II, Defendants claim that Comcast failed to state a claim for an Article II violation because the DOL ALJ's removal structure was constitutional and because Comcast failed to allege a compensable injury arising from the removal structure. *Id.* at 20–30.

On February 24, 2025, Defendants filed a Notice of Change in Position. Dkt. 34. This Notice informed the Court that the United States Government asserts that "multiple layers of removal restrictions for administrative law judges . . . do not comport with the separation of powers and Article II and that the Department of Justice will no longer defend them in litigation." *Id.* at 1. Accordingly, Defendants abandon their arguments that the removal restrictions of ALJs comport with Article II. *Id.* Nonetheless, Defendants maintain that the Court should grant their motion to dismiss in its entirety because Comcast has not shown a compensable injury as a result of the removal restrictions. *Id.* Further, Defendants maintain that even if Comcast could succeed on the merits of its Article II claim, Comcast is not entitled to injunctive relief. *Id.* at 1–2.

This matter has been fully briefed and argued before the Court. Dkts. 23, 28, 31, 32.[3] For

---

[2] On August 13, 2024, the ALJ stayed the administrative proceedings at issue pending resolution of this action. Dkt. 24 at 6 n.2.

[3] The parties have also filed supplemental authority and responses thereto, which have been considered by the Court. Dkts. 37, 38, 39, 40, 41.

the reasons that follow, the Court finds that the Seventh Amendment does not apply to the underlying proceeding before an ALJ. The Court also finds that the rights created by the Sarbanes-Oxley Act fall into the public rights exception. Accordingly, the Court will grant Defendants' Motion to Dismiss as it relates to Comcast's Seventh Amendment and Article III claims. The Court also finds that Comcast does not state a claim for an Article II violation because it has also not pled a compensable injury as a result of the removal restriction on DOL ALJs. Accordingly, the Court will grant Defendants' Motion to Dismiss as it relates to Comcast's Article II claim.

## I.    Factual Background

At this stage, the following facts from the Complaint are accepted as true:[4]

In May 2022, Lawrence Gloss and Travis Rosiek (collectively, "Administrative Complainants") filed complaints with the DOL against Comcast claiming retaliatory discharge in violation of 18 U.S.C. § 1514A, part of the Sarbanes-Oxley Act. Compl. ¶¶ 38–39. Administrative Complainants had been executives at BluVector, a cybersecurity company that Comcast acquired. *Id.* ¶ 41. The administrative complaint alleges that Comcast promised to pay certain BluVector employees individual incentive compensation packages totaling $250 million as part of the acquisition. *Id.* ¶¶ 42, 44. Conversely, Comcast alleges that it promised to provide comprehensive benefits and to pay (1) specific sums as salaries and bonuses and (2) specific amounts of Class A Common Stock of Comcast Corporation. *Id.* ¶ 43.

The administrative complaint maintains that Comcast violated federal securities laws when Comcast did not report the alleged $250 million incentive compensation owed to Administrative Complainants and other employees in its financial statements. *See id.* ¶ 40. The administrative

---

[4] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff. . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

complaint further alleges that the Administrative Complainants raised these concerns internally with Comcast. *Id.* Administrative Complainants, however, did not raise their concerns regarding shareholder fraud, accounting errors, or other Sarbanes-Oxley Act violations in writing. *Id.* ¶ 46. As a result of their oral conversations about Comcast's failure to include the incentive compensation plans in Comcast's financial statements, the Administrative Complainants claim that they were retaliated against and constructively discharged. *Id.* ¶¶ 47–48.

Pursuant to DOL regulations, the Occupational Safety and Health Administration ("OSHA") investigated Administrative Complainants' whistleblower allegations. *Id.* ¶ 49. After OSHA did not provide a decision for 60 days, Administrative Complainants requested that OSHA end its investigation and provide a determination. *Id.* ¶ 50. On March 23, 2023, DOL officials dismissed Administrative Complainants' actions. *Id.* ¶ 51. On April 18, 2023, Administrative Complainants appealed the dismissal of their complaints to the DOL's Office of Administrative Judges. *Id.* ¶ 52. Administrative Complainants restated their retaliation claims and sought incentive compensation, litigation costs, expert fees, attorney's fees, and interest from Comcast. *Id.* ¶ 56.

Before this Court, Comcast alleges that Administrative Complainants are neither seeking reinstatement nor backpay in the ALJ proceeding and are instead seeking breach of contract damages. *Id.* ¶ 64. Breach of contract damages are a common law remedy. *Id.* ¶ 65. Therefore, Comcast claims that, pursuant to the Seventh Amendment, it has the right to have a jury decide whether it is liable to Administrative Complainants and as such, the proceeding before the ALJ violates Article III. *Id.* ¶¶ 62–66. Further, Comcast claims that DOL ALJs exercise executive power and are impermissibly insulated from the President's control by two layers of for-cause removal protection, which violates Article II. *Id.* ¶¶ 87, 89.

## II.   Legal Standard

### A. 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). A motion to dismiss brought pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claim. A 12(b)(1) motion to dismiss can either contend that a complaint "fails to allege facts upon which subject matter jurisdiction can be based," or "that the jurisdictional allegations of the complaint were not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction is proper by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted). When reviewing a 12(b)(6) motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

5

### III.    Analysis

#### A. Count I: Seventh Amendment and Article III Claims

Defendants raise three challenges with regard to Count I. Dkt. 24 at 1–2. Defendants challenge this Court's jurisdiction at the threshold. *Id.* Next, Defendants turn to the merits of Comcast's claims and argue that Comcast has failed to state a claim under the Seventh Amendment and under Article III. *Id.* The Court will address each of these challenges in turn.

##### 1.    Jurisdiction

Defendants argue that the Sarbanes-Oxley Act bars this Court from exercising jurisdiction over Comcast's Seventh Amendment and Article III claims. *Id.* at 7. The Sarbanes-Oxley Act provides protection to employees of publicly traded companies who act as whistleblowers. 18 U.S.C. § 1514A. Pursuant to the Sarbanes-Oxley Act, whistleblower complaints are "governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code." 18 U.S.C. § 1514A(b)(2)(A). 49 U.S.C. § 42121(b)(4)(A) provides that "[a]ny person adversely affected or aggrieved by" a DOL administrative adjudication "may obtain review of the order in the [appropriate] United States Court of Appeals." An order of the Secretary of Labor that could be reviewed pursuant to subparagraph A "shall not be subject to judicial review in any criminal or other civil proceeding." 49 U.S.C. § 42121(b)(4)(B).

"A special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023). Congress may preclude district court jurisdiction explicitly or implicitly. *Id.* Here, the parties dispute whether the language of 42121(b)(4)(A)–(B) reflects Congress's intent to preclude review here.

6

First, the Court finds that the Sarbanes-Oxley Act does not explicitly bar district court jurisdiction of Comcast's claims. Here, Comcast is not challenging an *order* of the DOL—an action over which this Court would not have jurisdiction pursuant to the Sarbanes-Oxley Act. 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. §§ 42121(b)(4)(A)–(B). Instead, Comcast challenges the structure of DOL administrative adjudications. Dkt. 28 at 5–6.

Defendants rely on *Moats v. National Credit Union Administration Board* to support its position that Congress intended to explicitly preclude jurisdiction. 2024 WL 1724271 (S.D. Tex. Apr. 9, 2024) *aff'd*, 2025 WL 2437489 (5th Cir. Aug. 25, 2025); Dkt. 31 at 2. *Moats* involved a jurisdictional challenge in the context of the Federal Credit Union Act. 2024 WL 1724271, at *2. The Federal Credit Union Act states that "except as otherwise provided . . . , no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section . . . or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1786(k)(1). Ultimately, the district court found that the Federal Credit Union Act explicitly barred district court adjudication of the plaintiffs' claims. 2024 WL 1724271 at *4. Defendants argue the Federal Credit Union Act's preclusion of jurisdiction parallels Section 42121(b)(4)(B). Dkt. 31 at 2.

This Court is not persuaded. There is a fundamental difference between the language and breadth of the review provision encompassed by the Sarbanes-Oxley Act and the corresponding portion of the Federal Credit Union Act. Section 42121(b)(4)(B) states that "an order of the Secretary of Labor . . . shall not be subject to judicial review." Whereas the Federal Credit Union Act states that "no court shall have jurisdiction to affect . . . a notice or order" of the administrative agency. 12 U.S.C. § 1786(k)(1). One statute precludes the review of an order; the other precludes jurisdiction on any action that can *affect* an order. 49 U.S.C. § 42121(b)(4)(B) is narrower than

7

the provision of the Federal Credit Union Act limiting judicial review. In this case, under Section 42121(b)(4)(B), a constitutional challenge to agency structure does not involve review of an order. However, such a challenge could be understood to "affect" a notice or order under the Federal Credit Union Act. This is true because a structural challenge need not be explicitly related to any agency order, but a ruling on such a structural challenge could affect the validity or enforcement of an agency order. Thus, Defendant's reliance on *Moats* is unavailing.

Because the statute limiting review under 49 U.S.C. § 42121(b)(4)(B) is narrower than limitations applying to the Federal Credit Union Act, the Court finds that Congress did not explicitly strip district courts of jurisdiction in Section 42121(b)(4)(B). Given Comcast's claim does not challenge an order of the DOL and instead challenges the structure of DOL administrative adjudications, this Court's jurisdiction is not explicitly barred by Section 42121(b)(4)(B).

Next, the Court must determine whether the Sarbanes-Oxley Act implicitly precludes this Court's jurisdiction over Comcast's claims. "[D]etermining whether Congress has impliedly divested district-court jurisdiction over agency action involves a two-step inquiry." *Bennett v. SEC*, 844 F.3d 174, 181 (4th Cir. 2016), *overruled on other grounds by Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023). The first step asks "whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Id.* (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). The second step "ask[s] whether plaintiff['s] 'claims are of the type Congress intended to be reviewed within this statutory structure.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212). The Court must answer both questions affirmatively to find that Congress "restrict[ed] judicial review." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010).

As to the first step, Defendants argue that Congress's intent to bar district court jurisdiction over Comcast's Seventh Amendment claim is fairly discernible because the Sarbanes-Oxley Act explicitly precludes district court review of final orders. Dkt. 24 at 8. If a defendant could challenge an ALJ proceeding before an order becomes final, Defendants argue that Section 42121(b)(4)(B) would be effectively void. Dkt. 31 at 2. Accordingly, Defendants contend that the explicit preclusion of review of final orders from district court review supports a finding of implicit preclusion of district court jurisdiction based on Congress's statutory scheme. *Id.*

In *Axon Enterprises v. Federal Trade Commission*, however, the Supreme Court instructs that "a review scheme for agency action [which] divests district courts of their ordinary jurisdiction . . . does not necessarily extend to every claim concerning agency action." 598 U.S. at 185; *see also Free Enter. Fund*, 561 U.S. at 491 ("Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule."). The *Axon* Court determined that the Securities and Exchange Commission and the Federal Trade Commission's statutory review scheme did not preclude district court review of "constitutional challenges to the Commissions' structure." *Axon*, 598 U.S. at 180. Per *Axon*, just because Section 42121(b)(4)(B) divests district courts of jurisdiction over final orders does not mean that every claim related to the Sarbanes-Oxley Act is precluded from district court review. *See* 598 U.S. at 185. Accordingly, the Court must move to the second step of the implicit preclusion analysis—whether Comcast's claims are of the type Congress intended to have reviewed in this statutory structure.

To answer the second step, the Court turns to the factors laid out in *Thunder Basin Coal Co. v. Reich*. 510 U.S. 200, 207 (1994). Courts "presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is

'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enter. Fund*, 561 U.S. at 489 (citing *Thunder Basin*, 510 U.S. at 212–13).

"[M]eaningful judicial review is the most important factor in the *Thunder Basin* analysis." *Bennett*, 844 F.3d at 183 n.7. Defendants argue that because Comcast can appeal a DOL adjudication to the Fourth Circuit, Comcast has access to meaningful judicial review. Dkt. 24 at 9–10. On one hand, "adequate judicial review does not usually demand a district court's involvement. Review of agency action in a court of appeals can alone 'meaningfully address[]' a party's claim." *Axon*, 598 U.S. at 190 (alteration in original) (citing *Thunder Basin*, 510 U.S. at 215).

In *Axon*, however, the Supreme Court found that review by a Court of Appeals after an adverse agency decision did not meaningfully address a party's claim that a Federal Trade Commission ALJ is unconstitutionally insulated from the President. 598 U.S. at 191. The Court noted that parties lose the right to meaningful judicial review when the party's claim is not predicated on whether it won or lost in front of the agency. *Id.* Rather, the claim "is about subjection to an illegitimate proceeding." *Id.* After the proceeding occurs, "the court of appeals can do nothing" to redress any potential harm. *Id.* In ruling, the Supreme Court was not clear about which other types of constitutional claims are structural challenges such that the parties "lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192 (citation omitted).

In *YAPP USA Automotive Systems, Inc. v. National Labor Relations Board*, the Eastern District of Michigan found that the plaintiff's Seventh Amendment claim challenging "the remedies being sought in the administrative proceeding" were not a "structural challenge." 748 F. Supp. 3d 497, 513 (E.D. Mich. 2024). The court found that YAPP could receive meaningful

review by the Court of Appeals after an agency determination. *Id.* In that case, the remedy sought in the adjudicative proceeding was "a request to 'make whole' employees who suffered 'direct or foreseeable pecuniary harms' as a result of YAPP's alleged unlawful conduct." *Id.* at 504 (citations omitted). Plaintiff argued that this remedy was more akin to compensatory damages that could only be awarded by a jury. *Id.* at 513. The district court found that this was not "a 'structural' challenge attacking the very nature of the agency action." *Id.* Thus, *YAPP* is distinguishable from the instant case because the plaintiffs there only challenged the agency's ability to award a specific type of remedy. *Id.*

Here, Comcast does not challenge the DOL's ability to award a remedy of incentive compensation packages. Dkt. 28 at 10. Rather, Comcast challenges the DOL ALJ's constitutional authority to award a legal remedy absent a jury trial. Compl. ¶¶ 64–66. Therefore, Comcast's claim is more akin to the structural challenge in *Axon.* In other words, Comcast's alleged harms would arise under *any* appearance before a DOL ALJ, not just if the ALJ were to award certain remedies. *See YAPP*, 748 F. Supp. 3d at 513 (finding that claim challenging only the remedies sought in the administrative proceeding can receive meaningful review absent district court jurisdiction); *Blankenship v. Fin. Indus. Regul. Auth.*, 2024 WL 4043442, at *3 (E.D. Pa. Sept. 4, 2024) (plaintiff's "injuries are not 'here-and-now' because they do not arise merely from his appearance in [the administrative] proceedings"). Accordingly, Comcast would not have meaningful judicial review over its Seventh Amendment claim if it had to first adjudicate the claim in front of the DOL ALJ. Therefore, the first *Thunder Basin* factor cuts in favor of granting district court jurisdiction over Comcast's Seventh Amendment claim.

The second *Thunder Basin* factor requires the Court to determine whether Comcast's Seventh Amendment claim is "wholly 'collateral'" to the statutory review provision. *Thunder*

*Basin*, 510 U.S. at 212. A constitutional claim is *not* wholly collateral when it is the "vehicle by which" the plaintiff seeks to challenge an agency decision. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22 (2012). *Axon* instructs that a challenge is wholly collateral if it challenges an agency's "power to proceed as all," as opposed to "actions taken in the agency proceeding." *Axon*, 598 U.S. at 192; *see also YAPP*, 748 F. Supp. 3d at 513 ("[D]etermining what type of remedies are appropriate or permissible under the [National Labor Relations Act] is not 'wholly collateral' to the functioning of the [National Labor Relations Board]."). Claims are wholly collateral if they "have nothing to do with the enforcement-related matters" of an agency or with the claims the agency "would adjudicate." *Axon*, 598 U.S. at 193. Claims are also wholly collateral if they "object to the [agency's] power generally, not to anything particular about how that power was wielded." *Id.*

Defendants argue that Comcast is using its Seventh Amendment claim to challenge ALJ Farley's ruling that "the relief requested in the complaint may be granted." Compl. ¶ 11. The Court disagrees. For the purposes of this lawsuit, Comcast assumes that the Sarbanes-Oxley Act permits the DOL to award Administrative Complainants the relief they seek. Dkt. 28 at 10. Instead, Comcast challenges the DOL's "authority to subject Comcast to [the ALJ] proceedings." *Id.*

Here, Comcast challenges the DOL's ability to proceed to adjudicate the Administrative Complainants' claims before an ALJ instead of a jury. Dkt. 28 at 10. This is a challenge to the DOL's ability to proceed, as opposed to a challenge to an action within a proceeding. Accordingly, Comcast's challenges are wholly collateral to the agency proceeding and as such, the second *Thunder Basin* factor counsels in favor of this Court exercising jurisdiction over Comcast's claims before this Court.

12

Finally, the Court turns to the third *Thunder Basin* factor, which asks whether Comcast's claims are outside of the DOL's expertise. *See Thunder Basin*, 510 U.S. at 212. Defendants argue that the resolution of Administrative Complainants' underlying claims "in Comcast's favor" in front of an ALJ "would avoid the need to reach the Seventh Amendment claim at all." Dkt. 24 at 11. In *Axon*, the Supreme Court found that a claim was unrelated to agency expertise when the claim "allege[d] injury not from this or that ruling but from subjection to all agency authority." *Axon*, 598 U.S. at 195. The Court reasoned that the harm of subjection to agency authority would remain regardless of how agency expertise was "brought to bear" on the issues of the case. *Id.* However, "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding, . . . especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Loma Linda-Inland Consortium for Healthcare Educ. v. Nat'l Lab. Rels. Bd.*, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023). Defendants argue that *Axon* is inapplicable because here, Comcast's claims turn on how agency "power was wielded" and not objections to agency "power generally." Dkt. 24 at 12 (quoting *Axon*, 598 U.S. at 190, 193). However, Comcast's claims go to the DOL's general power to adjudicate claims that are legal in nature and not how any power to adjudicate claims is wielded or applied in certain factual contexts.

Defendants attempt to analogize this case to *Elgin v. Department of Treasury*. Dkt. 24 at 10. There, the petitioners challenged the constitutionality of a federal statute that prohibited individuals who failed to register for the Selective Service from being employed by an executive agency. *Elgin*, 567 U.S. at 7. All petitioners had been discharged from their employing agencies for failing to register for the Selective Service. *Id.* The Supreme Court found that the petitioners claims were not outside of agency expertise because they involved "threshold questions" related

13

to "the employment context [which] may obviate the need to address the constitutional challenge." *Id.* at 22–23. Further, "resolution of [the] claims in the employee's favor might [have] fully dispose[d] of the case." *Id.* at 23. Defendants argue that resolution of the Sarbanes-Oxley whistleblower retaliation claim in Comcast's favor would avoid the need to reach Comcast's Seventh Amendment claim. Dkt. 24 at 11. However, Comcast clarifies that its Seventh Amendment claim relates to having a jury decide their case, irrespective of whether Comcast prevails on Administrative Complainants' substantive allegations. Dkt. 28 at 11. Therefore, *Elgin* appears to be inapposite.

Accordingly, *Axon* is applicable to the instant case and instructs that a general, structural claim like Comcast's Seventh Amendment claim, does not rely on agency expertise. *Axon*, 598 U.S. at 195. Therefore, the third *Thunder Basin* factor counsels in favor of finding this Court has jurisdiction to hear Comcast's Seventh Amendment claim.

All three *Thunder Basin* factors support a finding that Congress did not intend to implicitly preclude district courts from having jurisdiction over structural Seventh Amendment claims like the one Comcast brings within Count I. District court jurisdiction over Comcast's Seventh Amendment and Article III claim is not explicitly precluded nor is jurisdiction over Comcast's Seventh Amendment claim implicitly precluded. Accordingly, the Court will proceed to the merits of Count I.

    *2.*    *Merits of Comcast's Seventh Amendment Claim*

The Seventh Amendment preserves "the right of trial by jury" "in Suits at common law." U.S. Const. amend. VII. The term "common law" as used in the Seventh Amendment does not apply only to the common law actions recognized at ratification. *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 122 (2024). Instead, the Seventh Amendment "embrace[s] all suits which are not

14

of equity or admiralty jurisdiction." *Id.* (alteration in original). "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). Because some causes of action can be both legal and equitable, the remedy is "the 'more important' consideration." *Id.* at 123 (citation omitted).

"[M]oney damages are the prototypical common law remedy." *Id.* The Supreme Court, however, has noted that "[m]onetary relief can be legal or equitable . . . [A] monetary remedy is legal if it is designed to punish or deter the wrongdoer" whereas a monetary remedy is equitable if it is designed "solely to 'restore the status quo.'" *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). Here, the Court finds that the remedy at issue is equitable but finds no clear authority for whether a Sarbanes-Oxley whistleblower retaliation claim is legal or equitable. Accordingly, the Court will rely on its determination that the remedy here is equitable and find that the underlying claims are equitable.

Notably, the Administrative Complainants' Response to Respondent's Motion to Compel states that Mr. Rosiek does not seek reinstatement, back pay, or front pay. Compl. Ex. B ("Complainants Response to Respondent's Motion to Compel Discovery Responses") at 2. However, "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78 (1962). Accordingly, the Court must look to the substance of the remedy requested and not the characterizations made in pleadings.

In *SEC v. Jarkesy*, the Supreme Court recently analyzed the contours of the Seventh Amendment. 603 U.S. at 109 (holding that the subject of an SEC enforcement action for alleged securities fraud is entitled to a jury trial). However, *Jarkesy* focused heavily on the punitive nature of the damages at issue in determining that the claim at issue was legal in nature, thereby

15

implicating the Seventh Amendment.[5]  *Id.* at 123.  Here, the Administrative Complainants are not seeking punitive damages; they are seeking a form of restitution.  *See* Compl. Ex. B at 2. Restitution is an equitable remedy because it is aimed at "restoring the status quo and ordering the return of that which rightfully belongs" to the victim.  *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946).  Pursuant to the Sarbanes-Oxley Act, whistleblowers are entitled to the "relief necessary to make the employee whole," including reinstatement, back pay, or compensation for special damages.  18 U.S.C. § 1514A(c)(1)-(2).  The Supreme Court has specifically characterized reinstatement and back pay as an equitable remedy.  *West v. Gibson*, 527 U.S. 212, 217 (1999); *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 572 (1990).

Here, the remedy the Administrative Complainants seek is the "percentage incentive compensation liability Comcast promised" to BluVector employees.  Compl. Ex. B at 2. Defendants argue that the percentage incentive compensation is actually front pay.  Dkt. 24 at 16. Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."  *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).  Front pay is an equitable remedy "'designed to place the complainant in the identical financial position' that she would have occupied has she remained employed or been reinstated."  *Deltek, Inc. v. Dep't of Lab., Admin. Rev. Bd.*, 649 F. App'x 320, 333 (4th Cir. 2016); *see also Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022).

Comcast argues that the incentive compensation packages cannot be characterized as front pay because Administrative Complainants assert that they were entitled to their money in 2021, when they were still employees.  Dkt. 28 at 15.  Instead, Comcast equates the damages

---

[5] Comcast's supplemental authority, *AT&T, Inc. v. Federal Communications Commission*, also involved a "civil penalt[y]" scheme and is therefore inapplicable to the instant case.  135 F.4th 230, 236 (5th Cir. 2025).

Administrative Complainants seek to breach of contract and compensatory damages. *Id.* at 14. Administrative Complainants allege that they were constructively terminated for raising concerns about Comcast failing to report the incentive compensation liability that would be eventually owed to Administrative Complainants. Compl. Ex. E. ¶¶ 17–23. Had Administrative Complainants not been constructively terminated, as they alleged, they would have received, at some future time, their incentive compensation package. Accordingly, at this stage of proceedings, this type of relief is front pay "awarded for lost compensation . . . or in lieu of reinstatement." *Pollard*, 532 U.S. at 846.[6]

Although the remedy is the most important factor in determining whether a claim is legal or equitable, *Jarkesy* also analyzed the characterization of the cause of action. 603 U.S. at 125–36. The Seventh Amendment does not provide that only claims recognized by the common law at the time the amendment was ratified are entitled to a jury trial. *Id.* at 122. Instead, courts must analogize newly created statutory claims to claims at law or at equity as they existed when the Seventh Amendment was ratified. *Tull v. United States*, 481 U.S. 412, 417 (1987); *see also* Samuel L. Bray, *Equity, Law, and the Seventh Amendment*, 100 Tex. L. Rev. 467, 483 (2022). Comcast alleges that "[a]n antiretaliation claim under 18 U.S.C. § 1514A is generally akin to a common-law claim for wrongful discharge." Compl. ¶ 68.

---

[6] Comcast further argues (1) that Congress's choice to refer to the relief available under the Sarbanes-Oxley Act as that which would "make the employee whole" is not decisive in labeling relief under the statute as equitable; and (2) that legal, compensatory damages are also aimed at making the victim whole. Dkt. 28 at 16 (citing *Granfinanciera*, 492 U.S. 33, at 61 ("Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity.")). However, neither of these arguments addresses Fourth Circuit precedent, albeit non-binding, which found that "front pay is an equitable remedy" under the Sarbanes-Oxley Act. *Deltek, Inc.*, 649 Fed. App'x at 333. Accordingly, this Court is not persuaded by Comcast's arguments here.

The Fifth Circuit acknowledged a "common-law background to [the Sarbanes-Oxley Act's] antiretaliation claim." *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014).[7] *Halliburton* lists cases that "recognize torts for wrongful discharge of employment, which, in many cases, is essentially an antiretaliation claim." *Id.* at 266. However, these cases were decided from 1975 onwards. Accordingly, *Halliburton* provides no proof that there was a common-law analogue to a Sarbanes-Oxley retaliation claim at the time the Seventh Amendment was ratified.

Comcast attempts to analogize the instant Sarbanes-Oxley Act retaliation claim to a wrongful discharge claim. Dkt. 28 at 17–18. The Seventh Circuit found that an employee's unlawful discharge claim was akin to a common law breach of contract and tort claim. *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 669 (7th Cir. 1996). There, the plaintiff brought a claim under the Railway Labor Act ("RLA") claiming his employer improperly fired him because of his union activities. *Id.* at 667. The Seventh Circuit found that "the common law presumed that a contract existed between employers and employees." *Id.* at 668. Under British common law, "if there was no contract specifying a term of employment, 'the law construe[d] it to be a hiring for a year.'" *Id.* (quoting 1 W. Blackstone, *Commentaries on the Laws of England* 425) (alteration in original). Accordingly, Comcast argues that an improper discharge would have been akin to a breach of contract. Dkt. 28 at 18.

---

[7] Comcast also cites to *Pandazides v. Virginia Board of Education*, 13 F.3d 823 (4th Cir. 1994), in an attempt to analogize the Sarbanes-Oxley antiretaliation claims to the common law. Dkt. 28 at 17. There, the Fourth Circuit found that a disability discrimination claim under the Rehabilitation Act was a legal claim that was akin to a tort. *Pandazides*, 13 F.3d at 823, 829. The Fourth Circuit stated, "Rehabilitation Act claims are injuries to individuals and analogous to personal injury claims." *Id.* at 829. Sarbanes-Oxley retaliation claims for protected whistleblower activity do not appear to be sufficiently analogous to a disability discrimination claim.

However, this Court finds that it is not clear that wrongful discharge claims are grounded in common law. At American common law, employment contracts were deemed to be at will. Joan M. Krauskopf, *Employment Discharge: Survey and Critique of the Modern at Will Rule*, 51 UMKC L. Rev. 189, 191, 232 (1983); Donald G. Kempf, Jr. & Roger L. Taylor, *Wrongful Discharge: Historical Evolution, Current Developments and A Proposed Legislative Solution*, 28 San Diego L. Rev. 117, 118 (1991). The concept of wrongful discharge in American law was a twentieth century development. *See* Kempf & Taylor, at 121–23. The Virginia Supreme Court found that a whistleblower protection provision in the Virginia Code "provides a limited cause of action unknown at common law." *Ligon v. Cnty. of Goochland*, 689 S.E.2d 666, 669 (Va. 2010). This District has also found that Virginia law "does not recognize a common-law 'whistleblower' action for retaliatory discharge." *Lambert v. Whiting Turner Contractor*, No. 1:15-cv-958, 2016 WL 2946176, at *5 (E.D. Va. May 19, 2016).

While the Court is unaware of any authority that squarely defines a Sarbanes-Oxley Act retaliation claim as equitable, the Court is not persuaded that there is a common law analogue to these claims. Because the type of remedy is the most important factor in determining whether a claim is legal or equitable, the Court will rely on its determination that the remedy at issue here is equitable. Accordingly, the Sarbanes-Oxley claims at issue are equitable for purposes of the Seventh Amendment.

### 3.    Merits of Comcast's Article III Claim

Comcast also claims that ALJ adjudication of the Sarbanes-Oxley claims violates Article III. Compl. ¶¶ 20, 72. Article III vests "[t]he judicial Power of the United States . . . in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III § 1. Congress cannot extend "the Government's 'judicial Power'

19

[to] entities outside Article III." *Stern v. Marshall*, 564 U.S. 462, 484 (2011). "When determining whether a proceeding involves an exercise of Article III judicial power, this Court's precedents have distinguished between 'public rights' and 'private rights.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) (citation omitted).

"If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Jarkesy*, 603 U.S. at 128. If a suit concerns matters that "historically could have been determined exclusively by [the executive and legislative] branches," then it is a public right which can be adjudicated outside of an Article III court. *Id.* (alteration in original) (citation omitted). "[I]n cases not involving the Federal Government," as the underlying administrative claim here does not, the question "is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution.'" *Granfinanciera*, 492 U.S. at 54 (alterations in original) (quoting *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 593–94 (1985)).

Comcast argues that *Thomas v. Union Carbide* is inapplicable because the right at issue here is "quintessentially private" as it regulates empower-employee relations. Dkt. 28 at 19–20 (citing *Garvey v. Admin. Rev. Bd.*, 56 F.4th 110, 127 (D.C. Cir. 2022); *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 840 (9th Cir. 2024)). In *Thomas*, the Supreme Court found that the right at issue was "not a purely 'private' right but b[ore] many characteristics of a 'public right.'" 473 U.S. at 589 (citation omitted). Specifically, the Court noted that the arbitration scheme at issue created a public right because the arbitration scheme was "an integral part of a program safeguarding the public health." *Id.*

20

The Sarbanes-Oxley Act was created "[t]o safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation." *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014) (citing S. Rep. No. 107-146, at 2–11 (2002)). This goal implies a broader public right. Indeed, the Second Circuit and Northern District of California have both held that the DOL adjudication of whistleblower claims involve rights "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution . . . ." *Yellow Freight Sys., Inc. v. Martin*, 983 F.2d 1195, 1200–01 (2d Cir. 1993) (involving a Surface Transportation Act Assistance whistleblower claim); *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 807 (N.D. Cal. 2008) (involving a Section 1514A Sarbanes-Oxley whistleblower claim).

In *Jarkesy*, the Supreme Court explained that an action brought under OSHA in *Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission*, 430 U.S. 42 (1977), fell into the public rights exception. *Jarkesy*, 603 U.S. at 134–140.[8] In support of its finding that an OSHA claim falls into the public rights exception, the Supreme Court noted that OSHA was "self-consciously novel" in "concept and execution." *Id.* at 137. At the creation of the Sarbanes-Oxley Act, "Congress identified the lack of whistleblower protection as a 'significant deficiency' in the law." *Lawson v. FMR LLC*, 571 U.S. 429, 435 (2014) (quoting S. Rep. No. 107-146, at 10 (2002)). The Sarbanes-Oxley Act grew out of Enron's perpetuation of "massive shareholder fraud in large part due to a 'corporate code of silence.'" *Id.* (citation omitted). "[A]t the time, Enron's effort to 'quiet' whistleblowers generally were not proscribed under then-existing law." *Id.* (citation omitted). Therefore, the Sarbanes-Oxley Act is self-consciously novel and does not trace its "ancestry to the common law." *Jarkesy*, 603 U.S. at 137. Because the Sarbanes-Oxley Act is

---

[8] The Supreme Court declined to overrule *Atlas Roofing* but stated that its ruling was narrow. *Jarkesy*, 603 U.S. at 138–39.

novel and closely integrated into a regulatory scheme it does not implicate purely private rights. Accordingly, the Administrative Complainants' Sarbanes-Oxley whistleblower claim falls into the public rights exception and does not violate Article III.

## B. Count II: Removal

Through its Article II claim, Comcast alleges that the DOL ALJ's removal structure is unconstitutional. Compl. ¶¶ 87, 89. Defendants no longer contend that the removal structure is constitutional. Dkt. 34 at 1. Despite this shift, Defendants argue that Comcast's Article II removal claim should be dismissed because Comcast has not shown that it suffered a compensable injury as a result of the ALJ's removal structure. *Id.* Moreover, Defendants argue that should Comcast succeed on the merits of its removal claim, Comcast is not entitled to injunctive relief because Comcast does not challenge the validity of ALJ Farley's appointment. *Id.* at 1–2. Given the Defendants' change in position, the Court only addresses whether Comcast has alleged it suffered a compensable injury due to the removal structure and whether Comcast is entitled to injunctive relief.[9]

Defendants argue that Comcast must plead allegations to establish that it suffered a compensable injury caused by the challenged removal provision. Dkt. 24 at 21–22. They are correct. In *Collins v. Yellen*, the Supreme Court found that removal restrictions for the Consumer Finance Protection Bureau Director violated the Constitution but remanded the case on the issue of whether the "unconstitutional removal restriction caused any . . . harm." 594 U.S. 220, 260 (2021). In doing so, the Supreme Court held that a showing of compensable harm is a requirement

---

[9] Comcast seeks declaratory relief that the removal restrictions on DOL ALJs are unconstitutional. Compl. at 16. There is no longer an active dispute as to the constitutionality of removal restriction on DOL ALJs. Dkt. 34 at 1. Accordingly, the Court will not reach Comcast's request for declaratory relief as to the removal restriction.

22

to state an Article II removal claim. *Id.* Here, given Defendants' abandonment of the argument, there is no live dispute as to the constitutionality of the removal structure of DOL ALJs. However, even assuming there is an unconstitutional removal restriction, Comcast is not entitled to relief unless it alleged that the removal restriction caused it harm.

When an executive officer is properly appointed, an unconstitutional removal structure does not automatically inflict compensable harm. *Id.* at 257–58. Compensable harm would exist in instances where the President has attempted to remove the officer and failed, or "express[ed] displeasure" with the officer's actions and stated that but-for the restrictive statutory provisions, the officer would be removed. *Id.* at 259–60. The Court finds that Comcast has not pled facts to show that the President attempted to remove ALJ Farley or was otherwise displeased with his actions, and, therefore, Comcast has not alleged it suffered a compensable harm.

Comcast argues that post-*Axon*, being subject to a proceeding before an unconstitutionally insulated ALJ constitutes sufficient harm to succeed on the merits of a removal claim. Dkt. 28 at 28–30. *Axon* did not absolve plaintiffs of the need to allege harm. *Axon* only dealt with the threshold jurisdictional question of "whether the district courts have jurisdiction to hear" suits involving "constitutional challenges to [the Securities and Exchange Commission's and Federal Trade Commission's] structure." *Axon*, 598 U.S. at 180. If there was any doubt, in *Collins*, the Supreme Court recognized the narrowness of the *Axon* holding when the Court highlighted the difference between the harm needed to allege standing in a removal action and the harm needed for a plaintiff to be entitled to a declaration that an officer's actions were void *ab initio*. *Collins*, 594 U.S. at 258 n.24. The Court noted that the latter required a showing of compensable harm. *Id.* at 259–60.

Comcast attempts to avoid the application of *Collins* by arguing that the *Collins* plaintiff

sought to void agency action while Comcast seeks to avoid being subject to agency adjudication in the first instance. Dkt. 28 at 28–29. Comcast points to a Fifth Circuit opinion, *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021), to support its proposition that there is no compensable harm requirement to succeed on the merits of an Article II removal claim after *Collins*. Dkt. 28 at 28. This is not so. In *Cochran*, the Fifth Circuit merely found that the injury of being subjected to an unconstitutional administrative adjudication is sufficient to "to preserve district court jurisdiction" under the *Thunder Basin* factors.[10] 20 F.4th at 210. This Court agrees and so found here. However, the jurisdictional finding is separate from the Court's determination of whether Comcast states a claim.

Undoubtedly, the relief sought in *Collins* is different from the case before this Court. The Court recognizes that challenging whether a specific action is void is more discrete than challenging whether Comcast should be subjected to a DOL ALJ in the first instance.[11] Because *Collins* requires compensable harm for the more discrete challenge, it is logical that compensable harm should be required for the broader one as well.[12] *See Leachco, Inc. v. Consumer Prod. Safety*

---

[10] Some district courts have interpreted the Fifth Circuit as finding that challenging a removal provision as unconstitutional "*before* an insulated actor" satisfies the *Collins* harm requirement. *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, 742 F. Supp. 3d 755, 761 (S.D. Tex. 2024); *see also ABM Indus. Grps., LLC v. United States Dep't of Lab.*, 756 F. Supp. 3d 468, 487 (S.D. Tex. 2024). However, these opinions, like the Fifth Circuit's, are not binding on this Court, and this Court finds them unpersuasive.

[11] The Fourth Circuit, consistent with *Collins*, found that "a party who has successfully challenged an unconstitutional removal restriction is not entitled to have the underlying agency action set aside absent reason to believe that the unconstitutional removal provision itself inflicted harm." *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023). *K & R*, like *Collins*, involved a request for "vacatur of the agency's decision." *Id.* at 149.

[12] While the Supreme Court has issued declarations that removal provisions are unconstitutional without addressing whether the parties suffered a compensable harm, those cases were decided before the Supreme Court clarified the compensable harm requirement in *Collins*. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213–32 (2020); *Free Enter. Fund*, 561 U.S. at 492–508.

*Comm'n*, 103 F.4th 748, 753 (10th Cir. 2024) (finding plaintiff whose only asserted harm was appearing before an unconstitutionally structured agency did not establish sufficient compensable harm). Accordingly, this Court finds that Comcast must allege compensable harm to succeed on the merits of its Article II challenge.

Next, the Court must determine whether Comcast properly alleged compensable harm. In *Collins*, the Court offered two examples of how parties could plead compensable harm from a removal restriction: (1) "the President . . . attempted to remove [the ALJ] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" and (2) "the President . . . made a public statement expressing displeasure with actions taken by [the ALJ] and had asserted that he would remove [the ALJ] if the statute did not stand in the way." 594 U.S. at 259–60. Comcast has not alleged either of these facts or any other facts to support a finding that the removal provision for DOL ALJs caused it compensable harm.

Moreover, Comcast has not challenged ALJ Farley's appointment. "An executive officer who was properly appointed may lawfully exercise the power of his office." *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023). Accordingly, ALJ Farley's future actions in "fulfilling the duties of his office are legitimate and enforceable, even if the President's authority to remove the officer was unconstitutionally limited during his tenure." *Id.* In *K & R Contractors, LLC v. Keene*, the Fourth Circuit was confronted with a challenge nearly identical to that in *Collins*, wherein the plaintiff sought vacatur of an agency action. *Id.* Although the case before this Court does not involve a request for vacatur, *K & R Contractors* remains instructive in this instance. Simply put, it is unclear how the removal restriction in this case could cause Comcast compensable harm, independent of the harm required to show standing, when Comcast will merely be subjected to the authority of a constitutionally appointed officer whom the President has not evinced a desire

25

to remove.

Accordingly, Comcast has not alleged it suffered a compensable injury as a result of the removal restriction on DOL ALJs and therefore fails to state an Article II claim.

## IV.     Conclusion

The remedy sought by the Administrative Complainants in the underlying DOL ALJ adjudication is equitable, and, therefore, the Seventh Amendment does not apply to their claim. Further, the Sarbanes-Oxley Act creates a right that is novel and closely integrated to a regulatory scheme, thereby falling into the public rights exception.   Accordingly, the Court will grant Defendants' Motion to Dismiss as it relates to Comcast's Seventh Amendment and Article III claims.   Comcast has also not properly pled a compensable injury as a result of the removal restriction on DOL ALJs and has therefore failed to state a claim for an Article II violation. Accordingly, the Court will grant Defendants' Motion to Dismiss as it relates to Comcast's Article II claim.

A separate Order will issue.

Entered this 23rd day of September, 2025.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge

26